**DAVAR PRODUCTS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.O. 3526; Protest 65/12749(C)–19813–63.**

United States Customs Court
Second Division.
July 29, 1968.

Siegel, Mandell & Davidson, New York City (Allan H. Kamnitz, New York City, of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Harold L. Grossman and Irving A. Mandel, New York City, trial attys.), for defendant.

Before RAO and FORD, Judges.

RAO, Chief Judge.

This protest places in issue the classification as an entirety of an importation invoiced as "B/O Carver w/out Battery". The article in question was classified as a knife with other than fixed blade, valued at more than $6 per dozen, as provided for in paragraph 354 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and was assessed with duty at the rate of 17½ cents each and 27½ per centum ad valorem.

Plaintiff claims that the importation consists of two components, the one properly classifiable as an article having as an essential feature an electrical element or device, as provided for in paragraph 353 of the Tariff Act of 1930, as modified by Presidential Proclamation No. 3468, 97 Treas. Dec. 157, T.D. 55615, supplemented by Presidential Proclamation No. 3479, 97 Treas. Dec. 430, T.D. 55649, and dutiable at the rate of 12½ per centum ad valorem, and the other properly classifiable as blades of knives

which have other than fixed blades, pursuant to paragraph 354 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and dutiable at the rate of 5½ cents each and 27½ per centum ad valorem.

The relevant statutory provisions are as follows:

Paragraph 354 of the Tariff Act of 1930, as modified, supra:

* * * [A]ll knives by whatever name known, including such as are denominatively mentioned in the Tariff Act of 1930, which have folding or other than fixed blades or attachments, all the foregoing (except penknives and pocketknives * * *), valued at more than $6 per dozen ................ 17½¢ each and 27½% ad val.

Paragraph 354 of the Tariff Act of 1930, as modified, supra:

Blades, handles, or other parts of * * * all knives having folding or other than fixed blades or attachments shall be dutiable at not less than ........... 5½¢ each and 27½% ad val.

Paragraph 353 of the Tariff Act of 1930, as modified, supra:

Articles having as an essential feature an electrical element or device * * * wholly or in chief value of metal, and not specially provided for:

 *   *   *   *   *   *   *   *

Other * * * ............................ 12½% ad val.

---

It appears that the parties herein proceeded to litigate the issues in the trial of protest 65/6930 only to discover that the importation therein consisted of the knife blade alone. The case was then submitted on a stipulation between the parties and a judgment entered that the importation was properly classifiable under paragraph 354 of the Tariff Act of 1930, as modified. The record in that case has been incorporated into the case herein, for the purpose of utilizing that portion of the testimony as is applicable to the item of merchandise presently at issue.

A sample of the importation in question was entered into evidence as plaintiff's exhibit 1. For purposes of clarifying the testimony, the blade portion was also marked as plaintiff's exhibit 1–A and the handle portion as plaintiff's exhibit 1–B.

The handle portion is a cylindrical metal form approximately 1 inch in diameter and 7 inches long which resembles a slender flashlight with a ¾ inch deep cavity where the light would be. It contains a small motor and vibrating mechanism designed to be powered by two batteries. The blade portion is approximately 9½ inches long with one end embedded in a ¾ inch cork-shaped piece of plastic-like material. When the two portions are combined the cork-shaped butt is inserted into the cavity at one end of the handle and secured by

tightening a small screw. The entire unit then measures approximately 17 inches in length.

Mr. David Breslow, president of Davar Products, Inc., testified on behalf of the plaintiff. He stated that he was in charge of buying and selling the housewares and giftwares imported by Davar to customers all over the United States. In connection with an associate, Mr. Breslow helped design the importation. He stated that after making the handle portion, hereafter referred to as the power unit, and using it to make a battery-operated carving knife, they decided to utilize its rotating action to drive a back-scratcher and a massager. The back-scratcher unit was introduced in evidence as plaintiff's exhibit 2. It consists of a slender metal rod, one end embedded in a butt described previously and the other embedded in a small plastic hand. The entire back-scratcher unit is approximately 12 inches long. The massager unit was introduced in evidence as plaintiff's exhibit 3. Emerging from the same type of butt is a 2-inch metal rod with a ball end allowing flexible movement to an oval metal plate covered with rubber nodules.

A large portion of the testimony was devoted to the method of importation of the article at issue. Initially it appears that the power unit and one or two blades were imported in a box together. The witness stated that after the first few importations they began bringing over the articles in bulk, that is, either a shipment of blades and a separate shipment of power units or shipments containing both in quantity. The instant importation was in the latter mode. It contained an equal number of both portions, was invoiced as "B/O Carver w/out Battery" and, as admitted by the witness, consisted of units.

Regarding the merchandising of the battery-operated carver and its component units, the witness testified to a number of varying procedures. The entire articles were of course sold as battery-operated carvers. In addition the power units were sold separately as replacement parts. Individual power units were also sold together with a knife blade and a back-scratcher. In addition the back-scratcher and massagers represented by plaintiff's exhibits 2 and 3 were imported and sold together with power units. The witness stated that the same handle or power unit was used for the knife blade, back-scratcher, and massager and in his opinion did not lose its name or identity when joined with any of them. The witness testified that when the power unit, represented by plaintiff's exhibit 1–B, was attached to a back-scratcher, represented by plaintiff's exhibit 2, the unit was bought, sold, and known in the United States as a battery-operated back-scratcher. When the same power unit was attached to a massager, represented by plaintiff's exhibit 3, it was bought, sold, and known as a battery-operated massager.

On cross-examination the witness testified that the particular article in dispute, namely plaintiff's exhibit 1, is known as a battery-operated carving knife and is bought and sold as such in the United States. The witness also testified that a shipment of articles invoiced as battery-operated back-scratchers, appearing on the same invoice as the disputed importation, consisted of power units and back-scratchers imported together.

It has been repeatedly noted by the courts that the problem of entireties does not lend itself to rigid solutions inasmuch as the multiplicity of product designs and their rapid evolution make flexibility a necessity in this area. In the recent case of Silvine Importers, Inc. v. United States, 57 Cust.Ct. 362, C.D. 2821, this court adverted to some of the factors which should be considered in a dispute of this nature. They are mechanical coupling or physical joinder, functional interplay, unified packaging, and merger and subordination of identity.

The testimony in the instant case reveals that the importation at bar consists of an equal number of blades and power units intended for sale together as battery-operated knives. As a battery-operated knife the blade portion is physically joined to the power unit and both function together.

The only evidence herein which might provide any support for the contention that the importation is not an entirety is that connected with the nature of the power unit, since the blade portion is completely dependent on the power unit and its nature points to the existence of an entirety. Similar power units evidently may also be used as the basis of a battery-operated back-scratcher and a battery-operated massager. The principal question, therefore, is to what extent the multifunctional nature of the power unit affects the nature of the imported battery-operated knife.

Plaintiff advances a number of arguments based upon the nature of the power unit. One contention seems to be that the portion of the importation which consists of power units may be used to power either knives, massagers, or back-scratchers and, hence, is not dedicated to use with the knives as battery-operated knives. We consider this position to be untenable. To the extent that the testimony is clear, the merchandise involved in the instant importation consists of equal numbers of blades and power units, and it does not appear that the latter are used to power any other articles. The other applications of the power unit appear to be accomplished with other importations.

In addition, the concept of dedication is not necessarily determinative in the area of entireties since articles which have not been dedicated to use with one another in the strict sense in which the dedication test is normally applied may, nevertheless, be considered to be entireties for tariff purposes. See for example, Miniature Fashions, Inc. v. United States, 54 CCPA 11, C.A.D. 894.

Plaintiff suggests that the power unit is an individual and separate article of commerce and, hence, does not, when used with the knife, produce an entirety. We do not consider this argument valid, however, for whatever degree of separateness the power unit may have as an independent article of commerce does not serve to vitiate the entirety which results from its association with the knife blade. The separation of an article into its several components for purposes of tariff classification results from the independent nature of all its component articles, not just one of them. Thus for example in Columbia Shipbuilding Co. et al. v. United States, 11 Ct.Cust.Appls. 281, T.D. 39085, our appellate tribunal in holding as separate articles steam engines and fans which had been classified as entireties noted that "[e]ach engine is complete within itself as a steam engine, and each fan is complete within itself as a blower fan." The court went on to conclude as follows:

* * * [T]hat the engines and fans as imported were not entireties, notwithstanding the fact that they were designed to be operated together; for when the articles are installed for use each retains its own name and essential character, and neither one becomes in fact a part of the other. Nor do they then merge or unite so as to form together a new or distinct article having a different name or character. When in use the engine simply performs the function of an engine and retains its name as such, and the fan performs the function of a fan only and retains its separate name also.

On the instrument before the court, however, the blade does not perform the function of a knife independently of the power unit. Its cutting capacity and its utility derive from the power source. See also Sheldon & Co. v. United States, 14 Ct.Cust.Appls. 108, T.D. 41591, and United States, v. John Wanamaker, Philadelphia, Inc., 20 CCPA 367, T.D. 46132.

■ The most recent decisions of this court also indicate that it is the independence of both components which is at issue in a dispute over whether an article is an entirety. The independence of both must have been established by showing either that they have other uses, are sold separately, or retain their individual identities. In United Merchandising Corp. et al. v. United States, 48 Cust.Ct. 50, C.D. 2313, this court held among other things that batteries and radios imported together were not entireties. The batteries could be used to power other types of radios and conversely the radios could be powered by other batteries. Similarly in Silvine Importers, Inc. v. United States, supra, we held that an electrical cord capable of use with many appliances and an electric pot which was usable with domestic electric cords and occasionally sold alone did not constitute an entirety when imported together. See also Better Houseware Company v. United States, 40 Cust.Ct. 230, C.D. 1988, Astra Trading Corp. v. United States, 56 Cust.Ct. 555, C.D. 2703.

This case differs from preceding cases in which the court has decided that importations consisted of separate articles rather than entireties. Here one portion of the importation, namely, the blade is unequivocally *dependent*. It is usable with no other power unit, is not usable alone, and has no separate identity. In this respect, the facts herein come well within the frequently quoted statement of our appellate court in Altman & Co. v. United States, 13 Ct.Cust.Appls. 315, T.D. 41232:

> * * * [I]f an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

■ In sum, among the several criteria which have been applied by the courts in disputes of this nature—be it physical joinder, functional interplay, merchandising, or merger—the instant importation is an entirety. The fact that the power unit has two other applications is insufficient to destroy the entirety which results from its importation for use with a blade as a complete article of commerce known, bought, sold, and used as a battery-operated knife.

The record shows that the power unit has as an essential feature an electrical element or device. Nevertheless, we find that the entirety of which it is a component is more specifically provided for *eo nomine* within the provision for all knives by whatever name known rather than as an article having as an essential feature an electrical element or device, not specially provided for, within the purview of paragraph 353 of the Tariff Act of 1930, as modified, supra. F. B. Vandegrift & Co., Inc. v. United States, 41 Cust.Ct. 300, C.D. 2056.

We also note that the value of the imported units as entered and appraised is $10.15 per dozen well above the minimum of $6 per dozen called for by paragraph 354 of the Tariff Act of 1930, as modified, supra.

Accordingly, we affirm the classification of the importation as a knife with other than fixed blade, valued at more than $6 per dozen as provided for in paragraph 354 of said tariff act, as modified by said general agreement and the assessment of duty at the rate of 17½ cents each and 27½ per centum ad valorem. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.

FORD, J., concurs.