(C. D. 3816)

BROADWAY HALE STORES, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 30, 1969)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov* and *Velta Melnbrencis*, trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges

LANDIS, Judge: This protest covers a consignment of mirrors and wood mirror frames, separately invoiced and packed, shipped from Spain and entered at Los Angeles in August 1965. The official papers, in evidence, tell much of the story.

The mirrors and frames were shipped pursuant to plaintiff's purchase order No. 1263 to Rugil, a manufacturer in Sevilla, Spain, for household decorative items consisting of mirrors and mirror frames measuring 30 x 16 inches and 27½ x 16 inches. Consumption entry filed at Los Angeles was based on two invoices. A Rugil invoice covered 250 wooden gilt frames 27½ x 16 inches and 150 of the same 30 x 16 inches, priced at $10.62 each. An invoice from Jose Ruiz Gil, Sevilla, Spain, covered 416 flat mirrors priced at 24 cents each.

Plaintiff entered the mirrors and frames as separate commercial entities, the frames under the specification in TSUS (Tariff Schedules of the United States) item 206.60 for wood mirror frames, dutiable at 12 per centum ad valorem; the mirrors under TSUS item 544.54 for mirrors, with or without frames, measuring over one square foot in reflecting area, dutiable at 20 per centum ad valorem. It here protests customs liquidation of the mirrors and frames as a single commercial entity, namely, mirrors with or without frames, not over one square foot in reflecting area, dutiable at 35 per centum ad valorem under TSUS item 544.51. That customs classification, it seems, was prompted in part by a letter from customs at Los Angeles asking if the mirrors were intended for use with the frames and plaintiff's terse reply, noted on the letter, that they were. (Exhibit A.)

We stress that classification of the mirrors under TSUS item 544.51 is not before us. The mirrors are presumptively not over one square foot in reflecting area and, with or without frames, dutiable as classified. Plaintiff's only claim, in the context of this importation, is that the frames should be separately classified and assessed, as entered, under TSUS item 206.60. The nexus of the dispute lies in the following competing tariff classifications:

Classified (TSUS, schedule 5, part 3, subpart B) :

Mirrors, made of any of the glass described in items 541.11 through 544.41, with or without frames or cases (except framed or cased mirrors of precious metal, and mirrors designed for use in instruments) :

| 544.51 | Not over 1 sq. ft. in reflecting area_____ | 35% ad val. |
| | *    *    *    *    *    *    * | |
| 544.54 | Over 1 sq. ft. in reflecting area_____ | 20% ad val. |

Claimed (TSUS, schedule 2, part 1, subpart E) :

| 206.60 | Picture and mirror frames, of wood_____ | 12% ad val. |

Additional facts were brought out at trial. First, as to the frames. They are of wood, as stipulated. (R. 7.) A representative frame, size

30 x 16 inches, taken from the import shipment, is in evidence. (Exhibit 1.) It is, as we look at it, obviously decorative. A circular frame, fluted around the edges, and opening 8 inches across to mark the reflecting area of a mirror, mounted high in the frame, has the appearance of being set in an expansive spray of leaf "filigree", massed at the bottom and coming up to completely surround the frame. The "filigree" marks the outside dimensions of the frame. The finish on the frame, we would say, is that of antique gold.

The record testimony establishes that the 27½ x 16 size frame holds the same size mirror as the 30 x 16 frame but has different decorative features. Plaintiff's witness stated that the mirrors and frames were ordered together but purchased from different companies. There is no question that the mirrors were intended for use with the frames and were sold in the United States mounted in the frames. Mirrors mounted in a frame are admittedly more susceptible to breakage in transportation. The mirrors and frames were, therefore, separately packed to minimize breakage and, more mirrors (416) were imported than frames (400), to compensate for possible breakage. The frames could, of course, be fitted with mirrors, other than those imported, of a size to fit. We do not think it likely, as suggested in the record, that the frame would be used to mount objects other than a mirror.

Both sides hinge the argument in their briefs to the meaning of the words "with or without frames" in the context of mirrors. Plaintiff's research leads it to conclude that the words are intended to mean "framed" mirrors or, if you will, mirrors mounted in a frame when imported, compatible with the general principle that merchandise should be classified in the condition it is imported. *United States* v. *Citroen*, 223 U.S. 407; *Dwight* v. *Merritt*, 140 U.S. 213. Defendant points out that the words have been used in similar context in the various tariff acts going back, we find, to the Act of 1894. It cites a series of judicial precedents involving the words mirrors, with or without cases, headed by *United States* v. *Metropolitan Aluminum Co.*, 3 Ct. Cust. Appls. 224, T.D. 32537, where the words were literally construed and later polarized in the principle that mirrors with cases should be classified as "mirrors with or without cases" only where the mirror is the so-called "predominant feature" of the article. *United States* v. *Bonwit, Teller & Co. et al.*, 17 CCPA 96, T.D. 43429; *All-transport, Inc.*, and *Sterling Novelty Products* v. *United States*, 58 Cust. Ct. 98, C.D. 2896. Defendant closes with argument that the words "with or without frames" mean that mirrors and frames should be assessed as entireties, a "doctrine" used as aid to ascertain proper classification of merchandise where Congress has not created an express classification that governs. *Miniature Fashions, Inc.* v. *United States*, 54 CCPA 11, C.A.D. 894. The difficulty with that doctrine, as

the court of appeals said, is that "its scope can lead to two contrary conclusions depending on what criteria [of the several usually looked to] are given controlling effect." *Miniature Fashions, Inc.* v. *United States, supra,* page 17; see also, *Coty Processing Co., Inc.* v. *United States,* 23 CCPA 117, T.D. 47768.

Much could be said for and against the above opposing positions. It would not be convincing either way. For neither side cites us to anything that catches the purpose of the words "with or without frames" or why they were used. The words have no particular meaning. The addition of a frame neither changes the character or use or advances a mirror into a new article. *Wiederer et al.* v. *United States,* 78 Fed. 809. Since all mirrors are imported with or without frames, of what purpose to so specify? In *Zahn & Bowly et al.* v. *United States,* Synopsis of Decisions (1895), T.D. 16345, G.A. 3174, at page 777, the Board of General Appraisers was wont to construe the same words in the Tariff Act of 1894, as synonymous with or to be read "all mirrors not exceeding 144 square inches, *framed or unframed*" (at page 778). [Emphasis added.] We find that reading is consonant with the intent expressed in the various materials explanatory of the words used in the tariff schedules and sustain the protest.

While the background of TSUS items 544.51 and 544.54 cited in the respective briefs is somewhat open as to the meaning of the words "with or without frames", the words are discussed in the reference of "framed" mirrors as follows:

Item 544.51 covers mirrors measuring not over one square foot in area, with or without frames or cases. These mirrors, which are separately provided for in paragraph 230(d) of the Tariff Act of 1930, are provided for in the revised schedules at the existing rate of duty. The only difference is that the word "reflecting" has been inserted before the word "area" in the proposed provision. *When mirrors are framed, measurement of the actual area of the mirror is frequently difficult.*

Item 544.54—This provision encompasses mirrors over 1 square foot in reflecting area, with or without frames or cases. These mirrors are presently dutiable under paragraph 223 (and under paragraph 224 if specially processed) at specific rates of duty with an ad valorem minimum. Inasmuch as imports are currently entering at the minimum ad valorem rate, such ad valorem rate is reflected in the proposed provision. *Mirrors of this size are currently dutiable separately from the frames in which they may be mounted. This problem of separate classification and valuation of a mirror and its frame is avoided in the proposed provision.* [Emphasis added. Tariff Classification Study, schedule 5, page 138.]

Coming next to the purpose for the words, we find that the words "with or without" are also used in TSUS item 206.30 specifying "wood doors with or without their hardware" and TSUS item 540.71 speci-

fying, in part, "glass fiber filters, with or without their frameworks or supports". Why the words were used in those specifications is explained as follows:

Item 206.30 covers wood doors with or without their hardware at the rate of 15 percent ad valorem which is the rate presently applicable to wood doors under paragraph 412. Doors are normally imported without hardware, but the words "with or without their hardware" which have been added would eliminate the problems connected with the determinations of the component material of chief value. * * * [Tariff Classification Study, Schedule 2, at page 27.]

* * * the provision [item 540.71] for glass-fiber filters includes such articles "with or without their frameworks or supports". The quoted language is included to avoid the disruption to orderly classification which might be caused by classification based purely on the component material of chief value. * * * [Tariff Classification Study, Schedule 5, at page 129.]

In *A. Maschmeijer, Jr., Inc.* v. *United States*, 39 CCPA 139, 149, C.A.D. 476, the court of appeals stated that:

In construing the meaning and scope of statutory provisions in order to determine legislative intent or purpose thereof, every effort should be made to construe the same so that they will be consistent with other expressions of legislative intent on the same subject found in other laws so that all such enactments may be carried into effect without conflict. * * *

When we again read the background in explanation of items 544.51 and 544.54, cited *supra*, we are of opinion that the specification "mirrors, with or without frames" was intended to avoid disruptive classification, which could only occur in the importation of "framed" mirrors. TSUS item 207.00 provides for "articles not specially provided for, of wood". The term "of", as used in the tariff schedules, "means that the article is wholly or in chief value of the named material". TSUS, General Headnotes and Rules of Interpretation 9(f)(i). The frames in this case are more valuable than the mirrors. Assuming the mirrors had been imported mounted in the frame, and absent the words "with or without frames", the "disruption" is apparent. The article, a framed mirror, would be in chief value of wood. With the words, there is no problem of the comparative value of components. In the condition as imported in this case, where there were two articles, mirrors and frames, separately packed, the problem does not come up since it is logical to expect that the separate entities would be separately classified. It is apparent to us, therefore, that the classification of the identifiably separate commercial entities imported in this case, mirrors and frames, as one article, goes beyond what was intended by the words "with or without frames", namely "framed" mirrors. The intention of an importer with respect to the use of his imported merchandise, may be a consideration in the clas-

sification of the merchandise, but it is not alone determinative. Classification of merchandise is still controlled by its condition at the time of importation. *United States* v. *General Shipping & Trading Co. et al.*, 44 CCPA 168, C.A.D. 656.

Certainly an importer, in the absence of subterfuge or deceit, has the right to so fashion his merchandise that he may obtain a lower rate of duty than if not so fashioned. * * * [*Corporacion Argentina de Productores de Carnes* v. *United States*, 32 CCPA 175, 185, C.A.D. 304.]

The meaning we have given the words "mirrors, with or without frames" is also consistent with the parenthetical exception to that specification in item 544.51 reading "except framed or cased mirrors of precious metal". As headnoted in the *Five Per Cent Cases*, 6 Ct. Cust. Appls. 291, T.D. 35508, "the exception of a particular thing from the operation of the general words of a statute shows that in the opinion of the lawmaker the thing excepted would be within the general words had not the exception been made." The relevant exception, noted above, is clearly limited to mirrors "framed" with precious metal. The lawmakers were not concerned with frames imported separate from mirrors in the same shipment. It makes sense that they were concerned that "framed" mirrors be classified as mirrors in item 544.51 rather than by the component of chief value with the exception of mirrors framed with precious metal and mirrors designed for use in instruments.

There is even more recent support for what we have said in the Summaries of Trade and Tariff Information prepared in terms of TSUS schedule 2, released October 22, 1968, where the tariff commission reported, volume 2, page 79, in connection with plaintiff's claimed item 206.60 specification "Picture and mirror frames, of wood" that "the wood frame of imported *framed* [emphasis added] mirrors is not ordinarily separately dutiable (see items 544.51 to 544.55)." We believe the implication as to the classification of wood mirror frames without mirrors is self-evident.

Finally, classification under items 544.51 and 544.54 is tied to the size of the mirror's reflecting area. The reflecting area of a framed mirror is different from the area reflected when unframed. How then would one classify mirrors, not mounted in frames, over one square foot in reflecting area, imported for use with separately packed frames, imported in the same shipment, designed so that when mounted, the mirror would have a reflecting area of not over one square foot? In that hypothetical situation, the classification of the mirror and frame as a single entity opens the door to myriad problems which we think are avoided by holding that "mirrors with or without frames" means mirrors "framed" or "unframed", and that frames and mirrors, separately packed, when imported, are separately dutiable.

The protest is sustained. Judgment will enter accordingly.