**BORDER BROKERAGE CO., INC.**

v.

**UNITED STATES.**

**C.D. 4383; Protest No. 68/50596–27413.**

United States Customs Court,
First Division.

Oct. 5, 1972.

Glad & Tuttle, San Francisco, Cal. (George Tuttle, San Francisco, Cal., of counsel), for plaintiff.

Harlington Wood, Jr., Asst. Atty. Gen. (Susan C. Cassell, New York City, trial atty.), for defendant.

Before WATSON, MALETZ and RE, Judges.

RE, Judge:

The legal question presented in this case pertains to the proper classification, for customs duty purposes, of cer-

tain mercandise invoiced as "Dadoed Door Jambs H300 Sets 2/7 1/3". It consists of two side pieces of wood, in which there has been cut a dado or groove, and a top piece without a groove.

The imported doorjamb sets were assessed with duty by the customs officials as an entirety, i.e., as a unit, as "[a]rticles not specifically provided for, of wood", pursuant to item 207.00 of the Tariff Schedules of the United States. They were consequently assessed with duty at the rate of 16⅔ per centum ad valorem.

Plaintiff contends that to have assessed duty on the three-piece doorjamb sets as an entirety was "illegal, null and void." Plaintiff claims that the door-jamb sets should properly have been classified as lumber, under item 202.21 of the tariff schedules, and should, therefore, have been assessed with duty at the rate of $1.00 per thousand board feet. Alternatively, plaintiff claims that if the two dadoed side pieces are held to have been properly classified, in that event, the single top piece should be separately classified as standard wood molding, under item 202.63 of the tariff schedules, or as lumber, under item 202.-21 of the schedules.*

Plaintiff has indicated that the doorjambs are manufactured from rough cut lumber 1″ x 5″ or 1″ x 6″ to a molding machine so as to surface all four sides, dress the edges, and cut to length. As they are cut, a groove is cut at one end by a saw attachment, and the end is then cut off. Although without a groove, the top is also cut to the desired length. This process, plaintiff maintains, "is nothing more than the creation of lumber."

Defendant, on the other hand, emphasizes that the imported merchandise consists of three pieces of wood, two dadoed side pieces and a top piece, none of which have any commercial utility apart from their function as a doorjamb set.

The two side pieces have been dadoed, which is a chipping out to form a groove, so that the set can be fitted together. The three pieces form a commercial unit, which is known as a door-jamb set, and are not sold except as part of a set. The defendant maintains that, since the pieces of this set have been advanced by manufacture to the point where they are a complete doorjamb set, they are no longer lumber, and were, therefore, properly classified as "[a]rticles not specially provided for, of wood".

The following are the pertinent provisions of the Tariff Schedules of the United States:

*Classified*

"207.00  Articles not specially provided for, of wood ...16⅔% ad val."

*Claimed*

"Subpart B headnotes:

1.  This subpart covers lumber, wood siding, wood flooring, wood moldings, and certain wood carvings and ornaments, including such products when they have been drilled or treated.

2. For the purposes of this part, the following terms have the meanings hereby assigned to them:

(a) *Lumber:* A product of a sawmill or sawmill and planing mill derived from a log by lengthwise sawing which, in its original sawed condition, has at least 2 approximately parallel flat longitudinal sawed surfaces, and which may be rough, dressed, or worked, as set forth below:

(i) *rough lumber* is lumber just as it comes from the saw, whether in the original sawed size or edged, resawn, crosscut, or trimmed to smaller sizes;

(ii) *dressed lumber* is lumber which has been dressed or surfaced by

---

* A claim for alternative classification under item 799.00 of the tariff schedules as "other non-enumerated products" was not pursued by plaintiff at the trial nor treated in its brief.

planing on at least one edge or face; and

(iii) *worked lumber* is lumber which has been matched (provided with a tongued-and-grooved joint at the edges or ends), shiplapped (provided with a rabbeted or lapped joint at the edges), or patterned (shaped at the edges or on the faces to a patterned or molded form) on a matching machine, sticker or molder.

\* \* \* \* \* \*

(b) *Softwood:* Wood from trees of coniferous species (order Coniferae).

\* \* \* \* \* \*

(e) *Standard wood moldings:* Wood moldings worked to a pattern and having the same profile in cross section throughout their length.

\* \* \* \* \* \*

Lumber, rough, dressed, or worked (including softwood flooring, classifiable as lumber, but not including siding, molding, and hardwood flooring):

Softwood:

\* \* \* \* \* \*

202.21 Hemlock (*Tsuga* spp.) ..$1 per 1000 ft., board measure

\* \* \* \* \* \*

Wood moldings, and wood carvings and ornaments suitable for architectural or furniture decoration, whether or not drilled or treated:

202.63 Standard wood moldings, not drilled or treated ......1.5% ad val."

That the controverted merchandise is factually a commercial unit, known and sold as a dadoed doorjamb set, cannot be denied. The testimony of plaintiff's witness demonstrates with unusual clarity that the three pieces, which comprise the doorjamb set, are always sold in units of three, i.e., the two side pieces and the top piece. They are always sold as a set and have no utilitarian use or purpose except as part of that set.

An examination of the pertinent judicial precedents on the law of entireties will reveal that the dadoed doorjamb set is factually, and for tariff purposes, a commercial unit properly dutiable as an entirety. In Miniature Fashions, Inc. v. United States, 54 CCPA 11, C.A.D. 894 (1966), the Court of Customs and Patent Appeals cited with approval the discussion of the law of entireties found in the case of Donalds Ltd. v. United States, 32 Cust.Ct. 310, C.D. 1619 (1954). In the *Donalds* case, this court stated:

" \* \* \* if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent." 32 Cust.Ct. at 315.

The Court of Customs and Patent Appeals, in the *Miniature Fashions* case, also cited approvingly its decision in Altman & Co. v. United States, 13 Ct. Cust.Appls. 315, T.D. 41232 (1925). In the *Altman* case, the appellate court expressed the tariff law doctrine of entireties in the following language:

" \* \* \* if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately." 13 Ct.Cust.Appls. at 318.

Plaintiff, citing the *Donalds* case, recognizes that the doctrine of entireties is applicable to "separate entities which are intended to be used as a unit when imported". It contends, however, that the top or header piece of the doorjamb set is separately classifiable under an exception to the doctrine "where one of the articles packed with the others is eo nomine provided for". For this exception plaintiff relies upon the case of Strohmeyer & Arpe Co. v. United States, 63 Treas.Dec. 775, T.D. 46376 (1933).

In the *Strohmeyer & Arpe* case, the imported merchandise consisted of small packages, "each package containing eight crackers arranged [around] a small piece of cheese wrapped in foil with a piece of cardboard forming a backing therefor and the whole inclosed in cellophane." 63 Treas.Dec. at 776. Although the plaintiff in that case claimed that the importation constituted an entirety for tariff purposes, the court stated:

"Here we have two commodities, crackers or biscuits and cheese. The fact that they are imported together and wrapped for purposes of convenience in packages containing a number of the biscuits and a piece of cheese does not, in our judgment, make them an entirety. The statute contains *eo nomine* provisions for cheese and for biscuits. The wrapping together of these two commodities does not create a new article. They remain biscuits or crackers and cheese and as such are separately dutiable * * *." 63 Treas.Dec. at 777.

Since the court, in the *Strohmeyer & Arpe* case, relied for its authority on the case of United States v. Wanamaker, 20 CCPA 367, T.D. 46132 (1933), the basis for the court's decision is clear and unmistakable. In the *Wanamaker* case, the merchandise consisted of a handbag fitted with a watch attached to the bag with straps. The court held that the watches and handbags were separate entities, and were not entireties for tariff purposes. The court indicated that there was "no natural affinity or relation between a leather handbag and a watch", and that "[n]either is normally essential to the completeness of the other." 20 CCPA at 369.

In the *Wanamaker* case, particularly pertinent is the statement of the court which distinguished the cheese and cracker package from the merchandise in the *Altman* case. In the *Altman* case, the merchandise consisted of "untrimmed cotton corsets", and "lace trimmings". The court explained that, un-

like the cheese and crackers, in the *Altman* case the "structure of the respective articles was such as that it was obviously intended they should be brought together in a finished product after importation." Significantly, the court added: "Each was necessary to the other to produce a new article satisfactory for eventual use. There was a natural and essential connection between the two." 20 CCPA at 370, and quoted in 63 Treas.Dec. at 777.

In the case at bar, it would seem obvious that plaintiff cannot find support in the *Strohmeyer & Arpe* case. The cheese and the crackers did not lose their identities, nor did they merge to create a new article of commerce. This cannot be said of the merchandise at bar. Here, not only have the three pieces of the doorjamb sets an affinity or relation to one another, but also, they have merged into a new article of commerce known as a dadoed doorjamb set.

The most recent expression of the Court of Customs and Patent Appeals on the doctrine of entireties is found in the case of United States v. Baldt Anchor, Chain & Forge Division of the Boston Metals Co. et al., C.A.D. 1051, 459 F.2d 1403, 59 CCPA (1972). Although, in the various cases where it has been discussed, the doctrine may have been differently phrased, there is no doubt that, under existing judicial authority, the doorjamb sets at bar were properly dutiable as entireties. The two dadoed side pieces and the top or header piece were imported together and, when joined together were designed to, and did in fact, constitute a complete commercial entity or article of commerce known as a "dadoed door jamb set". On the evidence presented, there can be no doubt that the doorjamb set at bar constitutes a commercial unit, and was properly held dutiable as an entirety. Consequently, plaintiff's claim for separate classification of the top or header piece as lumber, under item 202.21 of the tariff schedules, or as standard wood moldings, under item 202.63 of the tariff schedules, is without merit, and is overruled.

In support of its contention that the imported merchandise should be classified as lumber, plaintiff relies on the authority of A. N. Deringer, Inc. v. United States, 61 Cust.Ct. 66, C.D. 3530, 287 F.Supp. 1016 (1968). Plaintiff asserts that, even though lumber "is cut to lengths for a specific use, or is used as a door jamb does not detract from the classification as lumber", and quotes the following paragraph from one of the headnotes to the *Deringer* case:

"The language of the tariff schedules makes it clear that various specified articles (e.g., softwood flooring, hardwood flooring, molding) are properly dutiable as lumber even though they are usable only for a single purpose and are known by a separate name other than 'lumber.' It is, therefore, apparent that the classification of horsefeathers as lumber under the tariff schedules is not precluded by the fact that they are 'used for one thing only' or are so far advanced that they 'can be used only for a definite purpose.' " 61 Cust.Ct. at 67.

In the *Deringer* case, this court sustained the importer's protest that "horsefeathers", as a backing on the side or roof of a building, were classifiable as lumber, rather than as articles of wood, not specially provided for. A reading of the court's opinion in that case, however, will show that it is not authority for the position urged by the plaintiff, but rather, seems fully to support the defendant. In the *Deringer* case, even though the merchandise was known by a name other than "lumber", and even though its character had been so changed that it was useful only for one purpose, it was clear that it was merely one of the materials used in resurfacing roofs and sides of buildings. The "horsefeathers" were still only a material, and were not "the thing itself." This distinction, which follows a long line of judicial authority, was expressly made by this court in the *Deringer* case. Indeed, the point is emphasized, for the distinction was uttered as "a caveat". Judge Maletz, who wrote

for this court in the *Deringer* case, stated:

"There is a caveat to what has been said however: If the lumber had been processed to the extent that *it itself* became the article for which the material was intended, then it was dutiable as a manufacture of wood and not as lumber." (Emphasis in original.) 61 Cust.Ct. at 72, 287 F.Supp. at 1021.

For the distinction articulated by the court in the *Deringer* case the court relied upon and discussed the Court of Customs and Patent Appeals case of United States v. C. S. Emery & Co., 18 CCPA 208, T.D. 44399 (1930). The *Emery* case, and the many cases referred to therein, highlight the distinction that is pertinent to the case at bar.

In the *Emery* case, certain of the merchandise consisted of outside and inside thresholds called doorsills, which were imported complete except for cutting to size. The importer claimed that the doorsills were classifiable as lumber since they had "not been further manufactured than sawed, planed, and tongued and grooved." The defendant did not contend that anything had been done to the doorsills "except what is done in the process of sawing, planing, and tongueing and grooving, but that they have been so manufactured as to become finished articles and are, therefore, not 'other lumber' * * *." 18 CCPA at 210. The court agreed with the defendant's position, and held that the processes of sawing, planing, tongueing and grooving, were such a manufacturing of the merchandise "as to remove it from the category of lumber which still remains a material." *Ibid.*

In overruling the importer's protest, which claimed classification as lumber, the Court of Customs and Patent Appeals wrote:

"The difficulty with the importer's position is that the importation at bar is no longer lumber which is sawed, planed, and tongued and grooved, but is a distinct article made from lumber,

which, in the process of making, has been sawed, planed, and tongued and grooved. Flooring, siding, and ceiling may be sawed, planed, and tongued and grooved and yet it is material for making floors, ceilings and sidings. In the instant case the article which is sawed, planed, and tongued and grooved, is no longer lumber material for making anything, but is the thing itself and is a manufacture of wood, and, we think, dutiable under paragraph 410 [Tariff Act of 1922]." *Ibid.*

The court proceeded to distinguish the several cases relied upon by the importer, where merchandise was held classifiable as lumber even though it had been dedicated to a particular use. After enumerating the cases, and the nature of the merchandise in each, the court stated:

"It will be seen that in each of these cases the merchandise was dedicated to a certain use but that it had not been processed to the extent that it became the article for which the material was intended. The ceiling boards were not ceilings, the flooring boards were not floors, and the cello material was not the backs, tops or sides for cellos. Neither were the cedar pencil blocks converted into pencils or any part of pencils." 18 CCPA at 211.

In the *Emery* case, the court concluded that:

"In the instant case the sawed, planed, and tongued and grooved wood was no longer lumber dedicated to the making of some article as in the cases [cited and distinguished], but it was wood which had been processed into the article itself." *Ibid.*

Consequently, the court held that the doorsills were not dutiable as lumber, but as "manufactures of wood."

Although, in the case at bar in its brief, plaintiff quotes from the *Deringer* case, it makes no reference to the *Emery* case. The *Deringer* case, itself, however, highlighted the fact that the "horsefeathers" were still a material, i.e., lumber, albeit dedicated to the making of a particular article. They were not, however, the article itself. This court emphasized the distinction made by the appellate court in the *Emery* case, and reiterated that the horsefeathers "were merely one of the materials used in resurfacing roofs and sides of buildings; they were not 'the thing itself' ". 61 Cust.Ct. at 73, 287 F.Supp. at 1021. See also F. W. Myers & Co., Inc. v. United States, 69 Cust.Ct., C.D. 4370 (1972).

It can scarcely be doubted that the case at bar is fully embraced by the rationale of the Court of Customs and Patent Appeals in the *Emery* case. Much that is written in that opinion, and indeed, in the opinion of this court in the *Deringer* case, is applicable to the case at bar.

The merchandise at bar is not lumber because it has been so manufactured as to have ceased to be a material. It has become the article itself, i.e., a dadoed doorjamb set. It is no longer lumber which has been sawed, planed, tongued and grooved, but is a distinct article of commerce made from lumber. In summary, in the language of the courts, it is no longer lumber as a material for the making of an article, but is the article or thing itself.

Surely, plaintiff has not borne its dual burden of proof in establishing that its claimed classification of the merchandise is correct, and that the classification of the customs officials is erroneous.

In view of the foregoing, the protest is overruled, and the classification of the dadoed doorjamb sets under item 207.00 of the Tariff Schedules of the United States, as articles not specially provided for, of wood, is affirmed.

Judgment will issue accordingly.