**OXFORD INTERNATIONAL CORP.**

**v.**

**UNITED STATES.**

**C. D. 4540; Court No. 67/14275–98381.**

United States Customs Court.

May 6, 1974.

Allerton de C. Tompkins, New York City, for plaintiff.

Carla A. Hills, Asst. Atty. Gen. (Patrick D. Gill and Andrew P. Vance, New York City, trial attys.), for defendant.

RE, Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of bicycle mirrors imported from Japan in 1966. Each bicycle mirror consists of a glass reflecting surface, known as the "mirror head," and a rod and clamps, that constitute the "mounting bracket."

The defendant, in its brief, describes the imported bicycle mirrors as follows:

"The importation herein (as represented by Plaintiff's Exhibit 1) consists of an encased glass reflecting surface, 3″ in diameter, an 8″ long rod and two clamps. The rod and clamps (mounting bracket) are attached to the back of the encased reflecting surface (mirror head) by means of a threaded bolt extended perpendicularly from the back of the mirrorhead through the smaller clamp, which is similarly extended from the side of the rod. This joint is held together by a wing nut. The opposite end of the rod is threaded and extends through the larger clamp. This second clamp is held in place by two hexagonal nuts (one placed above one 'arm' of the clamp, the other below the second 'arm'). It is this larger clamp which is used to affix the imported article to a bicycle handle bar." (Defendant's brief, pp. 10–11.)

It is admitted that the merchandise was imported in its assembled condition in a polyethelene bag labelled "BICYCLE MIRROR."

The customs officials classified the merchandise under item 544.51 of the Tariff Schedules of the United States (TSUS) as mirrors, made of any of the glass described in items 541.11 through 544.41, with or without frames or cases, not over one square foot in reflecting area. Duty was consequently assessed at the rate of 35 per centum ad valorem.

The type of glass, and the size of the reflecting area, are not in issue.

Plaintiff contests that classification of the bicycle mirrors, and claims that they are more than the mirrors described in item 544.51, and that, as an entirety, they should properly be classified as parts of bicycles under item 732.-36 with duty at 30 per centum ad valorem.

Plaintiff claims alternatively that if the court were to decide that the importation is not to be classified as an entirety, then the mirror and frame, i. e., the "mirror head," and the rod and clamps, i. e., the "mounting bracket," should be held dutiable separately as follows: the "mirror head" or mirror portion of the merchandise be classified under item 544.51 (the provision for mirrors under which the customs officials classified the complete importation); and the "mounting bracket" or the bracket portion, should be classified as articles of steel not specially provided for, under item 657.20 with duty at 19 per centum ad valorem.

The defendant urges that the importation *is* an entirety, and that it has been properly treated as an entirety by the customs officials. It "vigorously opposes plaintiff's second alternate claim for severance and classification of the mounting bracket portion of the mirror as an other article of metal * * * under item 657.20, TSUS." If it were assumed, however, for purposes of argument only, that the importation is not an entirety, and were to be dutied separately, then the defendant would urge that the "mirror head" be classified as a mirror, and the "mounting bracket" as a bicycle part. Defendant adds that while it concedes that the brackets are articles of iron or steel, under item 657.20, it submits that "it is apparent that they are more specifically provided for by item 732.36, TSUS, as other parts of bicycles * * *."

The pertinent provisions of the tariff schedules may be set forth as follows:

*Classified under*:

"Mirrors, made of any of the glass described in items 541.11 through 544.41, with or without frames or cases (except framed or cased mirrors of precious metal, and mirrors designed for use in instruments):

| | | |
|---|---|---|
| 544.51 | Not over 1 sq. ft. in reflecting area | 35% ad val." |

*Claimed under*:

"Parts of bicycles:
    Frames:

| | | |
|---|---|---|
| * * * * * * | | |
| 732.36 | Other parts of bicycles | 30% ad val." |

*Alternatively claimed under*:

"Articles of iron or steel, not coated or plated with precious metal:

| | | |
|---|---|---|
| * * * * * * | | |
| | Other articles: | |
| 657.15 | Of tin plate | 12% ad val. |
| 657.20 | Other | 19% ad val." |

There is no serious dispute as to the facts of the case. Plaintiff's exhibit 1 is a representative sample of the merchandise and is labelled "BICYCLE MIRROR." Defendant's exhibit "A" is a "Bicycle Accessories Catalog" of the Oxford International Corporation. It is entitled "Oxford Better Bicycle Products," and depicts numerous bicycle articles including the "bicycle mirror" that is the subject of this litigation.

Plaintiff called two witnesses, and the substance of their testimony is easily restated. The importation is a bicycle mirror and is known, bought and sold as a bicycle mirror. It is a "bicycle accessory item." It is specially designed for use as a unit on a bicycle to provide the safety of rearview vision.

Certain testimony, calculated to show independent uses of the mirror head and the mounting bracket, and responses resulting from a misunderstanding of questions asked, may be disregarded. It is futile to quarrel with the conclusion that the "mirror head" is used solely with a "special bracket," and that "[o]ne is no good * * * without the other." Also, both items, as a single unit, are designed to be attached to a bicycle han-

dlebar, and are used exclusively on a bicycle as a bicycle mirror. It may be well to add that approximately 50% of the value to the entirety is represented by the mirror head, and the other 50% by the mounting bracket.

The threshold question presented is whether the importation is an entirety for customs duty purposes. It is the determination of the court that, in fact and in law, the importation is a commercial unit properly dutiable as an entirety. On this aspect of the present litigation the court agrees with the position urged by the defendant in its brief that, the importation, specially designed and imported as a unit, fully meets the criteria for customs classification as an entirety. That the mirror head and the mounting bracket constitute an entirety for customs duty purposes is sufficiently clear and requires but little discussion.

The concept of entireties has been judicially expounded in several cases that are very well known in the field of customs law. None of them leave any doubt that if there is imported into the United States, in one importation, separate parts, which by their nature are obviously intended to be used as a unit, and when joined by mere assembly, the separate parts are subordinated to the identity of the combined unit, and the combined unit forms a complete article of commerce, the combined unit is dutiable as an entirety.

A leading case is Miniature Fashions, Inc. v. United States, 54 CCPA 11, C.A. D. 894 (1966). In the *Miniature Fashions* case the Court of Customs and Patent Appeals cited with approval the discussion of the law of entireties found in the case of Donalds Ltd., Inc. v. United States, 32 Cust.Ct. 310, C.D. 1619 (1954). In the *Donalds* case, this court stated:

"* * * if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent." 32 Cust.Ct. at 315.

The Court of Customs and Patent Appeals, in the *Miniature Fashions* case, also cited approvingly its decision in Altman & Co. v. United States, 13 Ct. Cust.Appls. 315, T.D. 41232 (1925). In the *Altman* case, the appellate court expressed the tariff law doctrine of entireties in the following language:

"* * * if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately." 13 Ct.Cust.Appls. at 318.

It cannot be seriously questioned that all of the various parts that comprise the mirror head and the mounting bracket, when assembled, form a commercial unit known and sold as a bicycle mirror. The defendant is justified in relying upon Davar Products, Inc. v. United States, 287 F.Supp. 994, 61 Cust.Ct. 57, C.D. 3526 (1968), for its contention that the importation at bar is a legal entirety.

The defendant properly distinguishes the case of Broadway Hale Stores, Inc. v. United States, 62 Cust.Ct. 507, C.D. 3816 (1969) from the case at bar. That case dealt with "a consignment of mirrors and wood mirror frames, separately invoiced and packed." 62 Cust.Ct. at 508. Plaintiff protested the classification of the mirrors and frames as a single commercial entity as mirrors with or without frames under item 544.51 of the tariff schedules. The classification of the mirrors was not before the court, but only the classification of the frames as separate entities under the appropriate item of the tariff schedules. The

court noted that the frames were more valuable than the mirrors, and that, as imported, there were two articles, mirrors and frames, separately packed. In sustaining the protest the court stated that it was apparent that the importation therein consisted of "identifiably separate commercial entities." 62 Cust. Ct. at 511.

Quite apart from any guidance that may be derived from any single case, all of the judicial precedents which discuss the legal concept of entireties indicate clearly that the bicycle mirror at bar is a commercial entity dutiable as an entirety. See cases cited in Border Brokerage Co., Inc. v. United States, 349 F. Supp. 1011, 69 Cust.Ct. 130, C.D. 4383 (1972); Lafayette Radio Electronics Corp. v. United States, 421 F.2d 751, 57 CCPA 62, C.A.D. 977 (1970). Hence, it is the determination of the court that the customs officials properly treated the imported bicycle mirror as an entirety.

■ Having decided that the importation is legally dutiable as an entirety, it is necessary to determine the competing claims pertaining to its proper classification. In essence, the bicycle mirrors have been classified as mirrors, whereas plaintiff maintains that they are properly classifiable as parts of bicycles. The question presented, therefore, is whether plaintiff has succeeded in proving that the bicycle mirrors have been incorrectly classified, and that legally they should be classified as parts of bicycles.

■ There can be no question about the presumption of correctness that attaches to the classification of the customs officials, and the dual burden that must be borne by the plaintiff in order to prevail. 28 U.S.C. § 2635(a) (1970). See also United States v. New York Merchandise Co., Inc., 435 F.2d 1315, 58 CCPA 53, 58, C.A.D. 1004 (1970). Nevertheless, it is the determination of the court that the plaintiff has succeeded in establishing its primary claim that the bicycle mirrors were erroneously classified, and that they are properly classifiable, for customs duty purposes, as parts of bicycles.

The defendant not only stresses but concedes that the importation is an entirety, but wishes to have it classified as though it consisted only of a "mirror head." Were the question presented to be the proper classification of the mirror portion of the importation no one would seriously quarrel with its classification as a mirror. But this importation does not consist solely of the mirror. The mirror portion of the importation is only one part of the entirety. The entirety consists of the mirror portion plus the other parts that comprise the mounting portion. The importation consists of all the parts together which, when assembled, constitute a different and separate commercial unit bought and sold as a bicycle mirror.

The customs classification difficulty stems from the fact that there is no provision for "bicycle mirrors," and the question to be determined is whether they are embraced in the tariff provision which covers mirrors. Consequently, it is futile to *assume* that bicycle mirrors are covered under the contested tariff provision. Whether the importation, consisting of bicycle mirrors, was intended by Congress to be included in the contested provision for mirrors is the very question to be determined by the court.

At the trial, on motion by defendant, there was incorporated into the record of this case the record in the case of Irving W. Rice & Co., Inc. v. United States, 65 Cust.Ct. 125, C.D. 4064 (1970). In view of the reliance that defendant places upon the *Rice* case some extended treatment of that case seems warranted.

The importation in the *Rice* case consisted of a two-sided shaving mirror with an expansion arm. The mirror, which contained a reflecting surface and a magnifying surface, because of its "expansion arm" was also described as an "extension mirror." Although the most valuable component material of the

importation was base metal, the mirror was of glass.

It was agreed by both sides in the *Rice* case, that "the issue to be decided is whether TSUS item 544.51 covers all mirrors made of any of the glass described in items 541.11 through 544.41, with or without frames or cases, regardless of their component material in chief value." 65 Cust.Ct. at 127.

The articles in the *Rice* case were concededly to be classified as *mirrors,* and the only question presented was which one of two competing mirror classifications should have been applied. In that case the extension mirrors had been classified under item 544.51 of the tariff schedules at 33 per centum ad valorem, whereas plaintiff maintained that they were properly dutiable at only 17 per centum ad valorem under item 652.70 of the schedules. Item 544.51, under which the extension mirrors were classified, deals with "mirrors, made of any of the glass described in items 541.11 through 544.41, with or without frames or cases (except framed or cased mirrors of precious metal, and mirrors designed for use in instruments)." Item 652.70, under which plaintiff claimed classification, covers "photograph, picture, and similar frames; mirrors; all the foregoing of base metal, whether or not coated or plated with precious metal."

In the *Rice* case, in the language of the court, "[t]he crux of this dispute is that both of those dutiable items cover mirrors in different context * * *."

In sustaining the customs classification and overruling plaintiff's protest the court stated:

"The specific reference in TSUS item 544.51, to mirrors made of any of the described glass, refutes plaintiff's projected idea that we would construe TSUS item 544.51 to include all glass mirrors. We could not give it such construction. But mirrors, with or without frames, made of any of the described glass, are classified in TSUS item 544.51 regardless of the component material of chief value, excepting only framed or cased mirrors of precious metal, and mirrors designed for use in instruments. The lawmakers particular exception of framed or cased mirrors of precious metal (i. e., wholly or in chief value of precious metal) from the reach of TSUS item 544.51 in our opinion, clearly signals an intention that TSUS item 544.51 not be judicially diluted beyond the plain terms of the particular exception." 65 Cust.Ct. at 131.

Without deciding what mirrors were covered by item 652.70 of the tariff schedules, the court in the *Rice* case concluded as follows:

"It suffices that, in classifying mirrors made of described kinds of glass, TSUS item 544.51 is relatively more specific than is TSUS item 652.70 which classifies a much broader class of mirrors, without regard to the kind of reflecting glass or other reflecting material, of base metal. The provisions are, in their relevant parts, mutually exclusive and the mirrors embraced within TSUS item 544.51 are not covered by TSUS item 652.70." *Ibid.*

Surely, in view of the competing tariff items and the issue presented, the *Rice* case is clearly distinguishable. The importation in that case was concededly a mirror and the only question presented was to determine which mirror provision covered the imported mirror. Unlike the *Rice* case no claim is made in the case at bar that the bicycle mirror is classifiable under item 652.70 which covers mirrors of base metal. Simply stated, the *Rice* case solely raised the question whether the two-sided glass shaving mirror, mounted on an extension, and in chief value of metal, should or should not have been classified as a mirror of glass. Furthermore, the crucial questions whether the importation was something other or more than a "mirror," and therefore not covered by the mirror provisions, and whether it was in fact

and in law, a part of something else, were neither raised nor treated in the *Rice* case. Hence, the *Rice* case sheds but little light on the present litigation for these are the questions presented here.

Before noting the judicial authority that pertains to the classification of the bicycle mirrors as parts of bicycles it seems appropriate to comment upon the specific language of item 544.51 of the tariff schedules. That item covers glass mirrors "with or without frames or cases (except framed or cased mirrors of precious metal, and mirrors designed for use in instruments)." The language is quite clear and specific that, "except framed or cased mirrors of precious metal, and mirrors designed for use in instruments," the item covers mirrors "with or without frames or cases." One of the parts of the importation at bar is indeed a mirror, and that mirror is also framed. This framed mirror, however, is not the importation before the court. As indicated previously, the importation consists of a mirror and its frame, together with the other parts that are collectively called a mounting portion. The tariff item speaks only of "frames or cases," and in its pleadings the defendant "admits that the mounting portion of the merchandise is neither a frame nor a case for a mirror." Hence, the importation is not covered by item 544.51, nor is there any other tariff provision that specifically covers bicycle mirrors. There can therefore be no application of General Interpretative Rule 10(ij) of the tariff schedules. Rule 10(ij) states that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part."

The classification question before the court pertains to the entirety which includes all of the parts that constitute the importation. When assembled, the totality is immediately recognized and sold as a commercial unit known as a bicycle mirror.

It is the determination of the court that the bicycle mirror is a part of a bicycle, and is therefore properly dutiable under item 732.36 of the tariff schedules.

What constitutes a "part" or "parts," for customs duty purposes, has been treated with thoroughness in several decisions of this court and the Court of Customs and Patent Appeals. The leading cases that authoritatively set forth the applicable principles of law are Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849 (1964), and Trans Atlantic Company v. United States, 48 CCPA 30, C.A.D. 758 (1960). These and other cases are discussed in Vilem B. Haan et al. v. United States, 332 F.Supp. 182, 67 Cust.Ct. 104, C.D. 4260 (1971). The *Gallagher & Ascher* case is particularly helpful since it also indicates that an article may be a "part," for customs duty purposes, even though it is merely "optional equipment." Hence, whether the bicycle mirror is a bicycle "accessory" or "optional equipment" would in no way prevent it from being classified as a bicycle part. Mattel, Inc. v. United States, 287 F. Supp. 999, 61 Cust.Ct. 75, C.D. 3531 (1968). In the words of Judge Lane, who wrote the opinion of the Court of Customs and Patent Appeals in Victoria Distributors, Inc. v. United States, 425 F.2d 759, 761, 57 CCPA 76, 79, C.A.D. 979 (1970), " * * * to find that something would be dutiable as a 'part' does not in the least preclude its being an accessory in trade parlance." The *Victoria Distributors* case dealt with battery-operated horn-light combinations. There was no doubt that the bicycle trade considered them to be bicycle "accessories." There was also no doubt that "as a matter of commercial reality" they were dedicated to use on bicycles. In sustaining the classification as parts of bicycles, Judge Lane made the additional finding that "the horn-lights contribute to the safe and efficient

operation of bicycles." 425 F.2d 762. Surely, the same may be said of the bicycle mirrors at bar.

Many cases may be cited that support the classification of the bicycle mirrors as parts of bicycles. A few may suffice. In Victoria Distributors, Inc. v. United States, 425 F.2d 763, 57 CCPA 80, C.A.D. 980 (1970) the court found the holding in the prior case of the same name to be controlling, and held generator lighting sets, also optional equipment or accessories dedicated to use on bicycles, to be parts of bicycles.

In Eric Wedemeyer v. United States, 7 Cust.Ct. 141, C.D. 556 (1941), this court reversed the classification of the customs officials and held that "complete bicycle lamps" were properly dutiable as parts of bicycles. In the *Wedemeyer* case the court relied on United States v. Bosch Magneto Co., 13 Ct. Cust.Appls. 569, T.D. 41434 (1926), which held that lamps and horns were parts of automobiles. Commenting upon the safety aspect of the articles, the court, in the *Wedemeyer* case, observed that the reasoning of the *Bosch Magneto* case, as to the safety feature of the automobile lamps and horns, also applied to bicycles. Referring to state statutes, that required bicycles operated at night to be equipped with lamps, the court stated:

> "The existence of these statutes would clearly indicate that the safe, proper, and efficient operation of bicycles at night requires the illumination furnished by bicycle lamps such as those involved herein." 7 Cust.Ct. at 143.

The *Wedemeyer* case was relied upon and followed in the case of Spiegel Bros. Corp. v. United States, 9 Cust.Ct. 194,

C.D. 692 (1942), where bicycle horns were held to be parts of bicycles. More recently, in the case of Oxford International Corp. v. United States, 70 Cust.Ct. 217, C.D. 4433 (1973), this court sustained the classification of bicycle horn-lights as parts of bicycles. As in prior cases reference was made to the fact that the horn-lights "contribute to the safe and efficient operation of bicycles."

In F. A. Baker Co. v. United States, 17 Cust.Ct. 41, C.D. 1017 (1946), this court sustained the classification of bicycle inner tubes as parts of bicycles.

In Merry Bean Co. v. United States, 2 Cust.Ct. 123, C.D. 104 (1939), this court sustained the claim that leather straps fitted with metal buckles that served as substitute brakes for racing bicycles were parts of bicycles.

In Davies, Turner & Co. v. United States, 40 CCPA 193, C.A.D. 517 (1953) steel bicycle chains were held to be dutiable as parts of bicycles rather than "chains of iron or steel used for the transmission of power  *  *  *."

Much that was stated in the cited cases would apply to the case at bar.

In conclusion, it is the determination of the court that the imported bicycle mirrors, for customs purposes, are entireties that are properly classifiable as parts of bicycles under item 732.36 of the tariff schedules with duty at 30 per centum ad valorem. In view of the foregoing, the alternative claims of the plaintiff need not be considered further.

Since the court has determined that plaintiff has successfully borne its burden of proof, its claim for the classification of the imported merchandise under item 732.36 of the tariff schedules is hereby sustained.

Judgment will issue accordingly.