(C.D. 4005)

THE NISSHO AMERICAN CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 24, 1970)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* of counsel) for the plaintiff.
*William D. Ruckelshaus,* Assistant Attorney General (*Harold L. Grossman,* trial attorney), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

RAO, Chief Judge: The merchandise involved in the shipments covered by the entries in this case consists of cotton flannel shirts and corduroy pants, described on the invoices as cotton flannel shirts and corduroy longie sets. The shirts were assessed with duty at 25 per centum ad valorem under paragraph 919 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as shirts of cotton, not knit or crocheted, and the pants at 20 per centum ad valorem, as other cotton wearing apparel, not specially provided for. It is claimed in the protest that the shirts are dutiable at 20 per centum ad valorem, under said paragraph 919, as modified, individually, or as entireties with the longies.

The pertinent provisions of said paragraph 919, as modified are as follows:

> Clothing and articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of cotton, and not specially provided for:

\*     \*     \*     \*     \*     \*     \*

Other _____ 20% ad val.

\*          \*          \*          \*          \*          \*          \*

Shirts of cotton, not knit or crocheted_____ 25% ad val.

A sample of the merchandise was received in evidence at the trial as exhibit 1. It consists of a boy's plaid flannel shirt and a pair of corduroy trousers lined with the same plaid material as the shirt. The trouser cuffs are turned up to show the plaid lining and the pocket is trimmed with the same plaid material.

Plaintiff called three witnesses who have been engaged in the buying and selling of merchandise like exhibit 1 at wholesale and retail levels. Defendant called one witness who has been engaged in merchandising boys' flannel shirts.

Wilhelm B. Sievers, traffic import manager of the Import Division of Nissho American Corp., testified that he has been with the firm since 1957 and that his duties include supervision of the physical distribution and order processing of shipments and supervision of employees who maintain records of sales contracts, invoices, and billings. He did not do any buying or selling.

It appears from his testimony and from the contracts of purchase and sale (collective exhibit 2) that the imported merchandise is purchased, sold and invoiced as a Nissho set or a shirt and longie set. When imported the shirt and pants are normally pinned together and the articles are packed 12 sets to a bundle. The articles are matched as a unit and are sold to wholesalers and jobbers at one price. Neither the shirts nor the longies are purchased or sold separately. Mr. Sievers stated that some of the merchandise covered by the entries herein was invoiced at separate values at the request of the appraiser, but that the total value was equal to the purchase price shown on the order.

The witness also testified that sets, but not parts, had been returned to Nissho for replacement or credit and that such merchandise is put back in the warehouse and is resold as a set at a distress price, or at the same price, where the reason for the return did not affect the quality. He explained that returns from a retailer or consumer would be made to the wholesalers, but that where a large quantity of merchandise was returned, the wholesalers would send it back to Nissho for credit.

Jerome E. Garrity, senior buyer of the boys' department of W. T. Grant Co., national retail chain having about 1100 stores from coast to coast, testified that he had been with the firm 18 years and that as a senior buyer, he is directly responsible for all the merchandise put on sale in all stores. He dictates prices and is responsible for sales events, selection of merchandise, advertising, import purchases, and the entire operation of the department. He has made buying trips

overseas, has visited the stores in the chain, and has comparison shopped those of competitors, such as Kresge, Newberry, and Woolworth.

Mr. Garrity testified that his firm had been purchasing merchandise such as exhibit 1 at least since 1959. He had bought it both in Japan and Okinawa as lined sets, which were the same as exhibit 1 except that the parts were pinned together with safety pins. The lining of the pants matched the shirt and the cuff was turned back so that the customer could see that it was a set. The sets were purchased and invoiced at a single price and were invoiced to the branch stores at a single retail price, as flannel lined sets. They carried a button tag on the shirt indicating that the merchandise was a 2-piece set. The merchandise was advertised as a set and was sold at retail as a set. Neither the shirt nor the pants was ever sold separately. He had seen such merchandise sold at retail many times in the Grant stores and those of competitors, "always pinned together as sets."

The witness emphasized the importance of color in merchandising and said that the pants portion of the set would not make a good separate salable item because it would be difficult to find a plaid shirt which would go with it.

Mr. Garrity had seen requests from local stores for credit for whole sets but not for parts. Where domestic merchandise is returned as defective, it is his firm's policy to send it back to the manufacturer, but imported merchandise is destroyed or given to charity as it is too expensive to return it.

The witness testified that his organization sells flannel shirts and corduroy pants individually and in sets. He had purchased boys' flannel shirts for his firm but he had never bought shirts identical to that in exhibit 1 except as part of a set. Shirts which are sold separately are of better quality. He said that there was nothing about the shirts or the pants in exhibit 1 which would prevent them from being worn with other pants or shirts, but that they were not designed to be so used. He said that the shirt portion did have value although he did not recall ever seeing anything like it sold as a separate item. If he had to give a price on it, it would be 79 or 89 cents. The set sells for $2.39.

He said that if a customer came in with a child who required a size 6 pants and a size 4 shirt, he would not break up the set, but would sell a separate shirt and a separate pair of pants.

Murray L. Weinberg testified that he had been employed for 22 years by Allied Stores Marketing Corporation, owner of a group of approximately 110 retail department stores throughout the country. He served as market representative or buyer of children's wear for 14

years. In that capacity he developed and planned programs and purchased merchandise for the stores. He became involved with the purchase of children's wear in the Far East in 1961. He visited the stores every three or four months and comparison shopped those of competitors.

He stated that he was familiar with merchandise such as exhibit 1 and that his firm had purchased it since 1959, as longie sets or flannel lined sets. The shirt and pants were pinned together with safety pins, put in a polyethylene bag and shipped as a unit. The articles were designed and color coordinated to be sold as a unit and were purchased, invoiced, advertised, and sold as a set at a single price. Neither the pants portion nor the shirt portion was ever sold separately. He stated:

> The item was designed and patterned to be sold at a promotional price, and to the best of my knowledge, it has always been brought in as a plaid set, and consequently, we had always tied in the flannel lined pants with the exact same lined pattern as the shirt. We packaged it that way, and sold it together as a set. In this way, it could not be sold separately, in our opinion.

The witness said that his firm had bought flannel shirts separately but that they were of better workmanship and fabric, and in his opinion, those characteristics made them more salable as shirts. He had also purchased flannel lined corduroy pants separately, but of better quality. While the shirt and longie set was designed to be used as a unit, the shirt could be worn with other colored trousers and the trousers could be worn with any reasonably matching type of shirt. The ultimate consumer could use the articles for whatever purpose he liked.

Defendant called Jakob B. Marx, executive vice-president of Piedmont Shirt Company, owner of Kaynee Company, seller of boys' flannel shirts. He has been in charge of merchandising, styling, purchasing and pricing at Kaynee Company for 11 years and has visited trade shows, traveled with salesmen, and visited retail outlets in a broad area of the United States. He testified that he was familiar with merchandise such as the plaid flannel shirt in exhibit 1 and that his firm manufactures and sells merchandise of that general nature but of better quality. It sells thousands of dozens a season, as printed flannel shirts. In his opinion the shirt portion of exhibit 1 is known throughout the industry as a little boy's flannel shirt.

The record thus establishes that the shirt and longie set herein was designed, purchased, imported, and invoiced as a unit. The two pieces were matched as to color, print and fabric. The merchandise was advertised to retail customers as a set and was so sold both at wholesale and at retail. It was never broken up and the items sold separately.

If returned by a customer, it would be resold as a set or if defective, destroyed or given to charity. While the shirt portion is a shirt and the trouser portion trousers and the ultimate consumer may use them separately with other trousers or slacks, it is clear that they were designed and merchandised as a set to be worn together.

In support of its claim that the shirts and trousers are entireties for tariff purposes, plaintiff relies on *Miniature Fashions, Inc.* v. *United States*, 54 CCPA 11, C.A.D. 894 (1966). That case involved "cabana sets" or "two-piece shirt-short sets". The shirts and the shorts were separately assessed with duty and were claimed to be entireties. The record established that the items were designed as a unit, matched as to color, print, and fabric; imported as a unit, pinned together; invoiced as a unit; and invariably sold as a unit, both at wholesale and by retail establishments. They were inexpensive articles of children's apparel, which had very little, if any, value when separated. They did not even warrant the expense of removing the pins which attached the two pieces together. According to the record, where one of the parts was damaged, the entire set would be returned for credit or replacement, and would be put in a waste basket or given to charity. The parts could be worn together or with other shirts or shorts.

The court discussed a number of cases involving the entireties question, and stated (p. 16) :

> From the authorities discussed in the opinions below and the argument presented here, it is apparent that the doctrine of entireties is to be used as an aid to ascertain proper classification. Where Congress has not created an express classification to govern, the problem is one of ascertaining the most suitable classification. The result reached in *Lang* [*Lang Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 341, T.D. 42495 (1927)] appears to place the doctrine of entireties in its proper perspective. Thus whatever criteria from the doctrine of entireties is applied, e.g., "function," "use," "individual entities," "newly created entity," "intent," "design," or "commercial unit," such criteria may not circumvent the intent of Congress.

The court pointed out that classification is determined by the condition of the articles at the time of importation and held that at that time the articles were a unit and had no commercial value as separate articles. It rejected the argument that the taste of the wearer and the possibility that the article could be worn separately was controlling as to the proper classification of the goods as imported. The court concluded (p. 18) :

> There remains for consideration whether this determination circumvents any intent of Congress. We think the evidence estab-

lishes that the upper portions of the cabana sets are not the "shirts" on which Congress has fixed a duty of 25% ad val. Appellant has imported what has been designed and sold exclusively as a unit. The upper portion, from the evidence of record, has no commercial value when returned. The upper portions are not imported as separate shirts. In view of the evidence we think the upper portion of the imported sets is more properly classified under paragraph 919 as part of an entirety of clothing rather than as a shirt under the same paragraph. We do not find this to be contrary to the considerations given effect in *Lang, supra.*

Defendant attempts to distinguish this case alleging that the items comprising the shirt and longie set have a commercial reality, existence and value separate and apart from each other and are so bought and sold. The record, however, establishes no more than that there are shirts and trousers, of a better quality, which are bought and sold separately and that each article in the set has a separate intrinsic value. It is clear that the articles herein were not in fact marketed separately, and that they have no commercial value except as a set.

Defendant has cited numerous decisions involving the doctrine of entireties, some of which were considered by the trial court or the Court of Customs and Patent Appeals in the *Miniature Fashions* case. Since they involve different products and other fact situations, they are not dispositive of the issue before us. Cf. *Davar Products, Inc.* v. *United States*, 61 Cust. Ct. 57, 60, C.D. 3526, 287 F. Supp. 994 (1968), where we pointed out "that the problem of entireties does not lend itself to rigid solutions inasmuch as the multiplicity of product designs and their rapid evolution make flexibility a necessity in this area."

In *United States* v. *Altray Company*, 54 CCPA 107, C.A.D. 919 (1967), decided subsequent to the *Miniature Fashions* case, the court noted that the design of the merchandise (miniature artificial Christmas trees affixed to a foil wrapped chocolate wafer) contemplated its disassembling and the utilization of the constituents in the very manner for which they were used when sold as separate items. In the instant case, on the contrary, the design of the set contemplates its use as a unit even though it is possible to wear the items separately.

On the record presented and on the authority of *Miniature Fashions, Inc.* v. *United States, supra*, we hold that the shirts in the imported sets are dutiable as parts of an entirety of clothing under paragraph 919 of the Tariff Act of 1930, as modified, at 20 per centum ad valorem, rather than as shirts under the same paragraph.

The protest is sustained and judgment will be rendered for the plaintiff.