(C.D. 4079)

Shalom Baby Wear, Inc. *v.* United States

United States Customs Court, Second Division

(Decided September 23, 1970)

*Lane, Young & Fox* (*James G. McGoldrick* and *William H. Fox* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before Rao, Ford, and Newman, Judges

Ford, Judge: Upon importation, certain hooded parkas each containing a braided drawstring in the hood were classified by the collector of customs at the port of New York under the provisions

of paragraph 1529(a), Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as articles in part of braid. Consequently duty was assessed at the rate of 42½ per centum ad valorem as prescribed.

Plaintiff contends the parka and the drawstring should not have been appraised as entireties and hence classification under paragraph 1529(a), *supra*, is erroneous. It is the position of plaintiff that the parkas are subject to duty at 25 per centum ad valorem under the provisions of paragraph 917 of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877, as knit outerwear in chief value of cotton. The drawstrings it contends should have been separately appraised and are subject to classification under paragraph 1529(a) as braids not suitable for making or ornamenting bonnets, coats or hoods which provides for a rate of 42½ per centum ad valorem.

The pertinent portions of the statutes involved are here set forth:

Paragraph 1529(a) of the Tariff Act of 1930, as modified by T.D. 54108:

> Articles (including fabrics) wholly or in part of any product provided for in paragraph 1529(a), Tariff Act of 1930:
>> Provided for in subdivision [11] of paragraph 1529(a):
>>> In part of braids * * *_____ 42½% ad val.

Parkas:

Paragraph 917 of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877:

> Underwear, outerwear, and articles of all kinds, knit or crocheted, finished or unfinished, wholly or in chief value of cotton or other vegetable fiber, and not specially provided for * * *:
>> *       *       *       *       *       *       *
>> Other _____ 25% ad val.

The record consists of testimony of one witness called on behalf of plaintiff, Mr. Albert Shalom, and the receipt in evidence of a sample of the imported parka as plaintiff's exhibit 1–A, the braided drawstring being marked plaintiff's exhibit 1–B. The official papers were received in evidence without being marked.

Mr. Shalom, secretary of the importing corporation is also in charge of buying and selling and keeping the records of the corporation. He is familiar with the article involved having purchased the parkas. Counsel for the respective parties stipulated the imported parkas are knit articles in chief value of cotton and that the cord is braid which is drawn through the hood and encircles the face and head of the wearer and is tied under the chin.

The witness stated his company had imported parkas with hoods, some with small kangaroo pockets, some with rib waist or rib cuffs and others without these features. The styles varied some having long sleeves and others having short sleeves. Some of the parkas were fully zippered and others only half zippered. Some parkas are two piece outfits. Generally, hooded parkas are made with drawstrings. Sometimes the hoods have no shape and others are shaped to "lay right on the head" such as in exhibit 1.

The imported article is referred to in the trade as a "hooded parka." The drawstring is an added feature that adds to the warmth since it brings the garment tighter around the head. When there is a tremendous amount of exercise the hood does not remain on without the drawstring being tied.

Mr. Shalom admitted the braid was cut to size and the hood contained a provision for the drawstring. He never sold the braided drawstring, exhibit 1–B, separately although drawstrings could be purchased domestically from a number of firms. He never bought them domestically because of the amount of work necessary to insert them after importation. If the garment was received without the drawstring he would insist upon a discount or allowance.

The decisions on the question of entireties, involved herein, have reached widely divergent conclusions. Counsel for both parties have cited numerous cases supporting their respective positions. Basically, plaintiff contends the imported braided drawstring is not an entirety with the parka even though imported as part of the garment under the rule expressed in the case of *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T.D. 39680 (1923). The court therein had before it for consideration the question of entireties involving certain boots and leather straps imported together. The court held them not to be entireties based upon the following reasoning.

> It is clearly apparent from an examination of the exhibits in this case that any leather belt of proper width, regardless of the buckle attached thereto, could be used, if and when desired by the wearer of the boot, to bind the boot at the foot and ankle. If so used, could it be fairly argued that the leather belt had lost its identity and had merged with and become a part of the boot by assembly? Can it be fairly said that when the leather strap is attached to the boot by being passed through the rubber loop, it becomes so merged with the boot by assembly that it loses its identity as a leather strap? Certainly when thus united the boot and the strap do not merge so as to form a new or distinct article, having a different character or name. The boot remains a boot and the leather strap remains a leather strap, even when used together. The leather strap is attached to the *boot* for the purpose of binding the *boot* more tightly around the foot and ankle. It seems difficult

to use descriptive language of the boot and the strap without conclusively showing the uses and purposes of each to be separate and distinct. [Italics quoted.]

\*     \*     \*     \*     \*     \*     \*

We are of the opinion that even though it be considered that the boots and straps were designed to be used together, when desired, and were sold together by the importers, yet, when used together, each retains its identity, name, and character; each is a separate entity; and when attached, each performs its separate function without loss of any of its essential characteristics. The boot remains a boot and the leather strap remains a leather strap. When separated the boot remains useful as a boot. It retains its commercial entity and remains complete in itself, a rubber boot. The leather strap also retains its essential character and commercial entity, and remains complete in itself, a leather strap, or, as has been suggested, a leather belt.

Plaintiff concludes, based upon the language of this case, that the drawstring is a separate tariff entity which does not merge with the parka to become a new and distinct article having a different character or name.

Counsel also refers the court to the following cases in support of their role:

*Columbia Shipbuilding Co., et al.* v. *United States*, 11 Ct. Cust. Appls. 281, T.D. 39085; *United States* v. *John Wanamaker, Philadelphia, Inc.*, 20 CCPA 367, T.D. 46132; *Sheldon & Co.* v. *United States*, 14 Ct. Cust. Appls. 108, T.D. 41591; *United Merchandising Corp. et al.* v. *United States*, 48 Cust. Ct. 50, C.D. 2313; *Hughes Fawcett, Inc.* v. *United States*, 29 Cust. Ct. 1, C.D. 1434; *Camera Specialty Co., Inc., et al.* v. *United States*, 37 Cust. Ct. 144, C.D. 1814; *Better Houseware Company* v. *United States*, 40 Cust Ct. 230, C.D. 1988.

Defendant on the other hand relies upon the principles set forth in in the case of *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T.D. 41232 (1925), which involved an importation of corsets and separate packages of lace trimmings. The court after reviewing a number of prior decisions on the matter of entireties held these to be entireties based upon the following reasoning:

A consideration of these pronouncements of the courts leads to the conclusion that if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

Also relied upon by defendant is the case of *Miniature Fashions, Inc.* v. *United States*, 54 CCPA 11, C.A.D. 894 (1966), which involved so-called cabana sets each consisting of a shirt and shorts. The court in holding these sets to be entireties made the following observation:

> From the authorities discussed in the opinions below and the argument presented here, it is apparent that the doctrine of entireties is to be used as an aid to ascertain proper classification. Where Congress has not created an express classification to govern, the problem is one of ascertaining the most suitable classification. The result reached in *Lang* appears to place the doctrine of entireties in its proper perspective. Thus whatever criteria from the doctrine of entireties is applied, e.g., "function," "use," "individual entities," "newly created entity," "intent," "design" or "commercial unit," such criteria may not circumvent the intent of Congress.

The court then further considered the scope of the doctrine of entireties and the facts of the case and stated as follows:

> It is apparent that the doctrine of entireties, because of its scope, can lead to two contrary conclusions depending on what criteria are given controlling effect. It is also apparent that no decision here advanced by the parties is dispositive of the issue.

> Considering all of the evidence of record and the applicable law, we think the imported goods are more properly classified as entireties under paragraph 919 as articles of clothing n.s.p.f.

> Classification is determined by the condition of the articles at the time of importation. *United States* v. *Schoverling, supra.* Viewed at that time, the evidence shows that they were designed as a unit, matched as to color, print and fabric, imported as a unit and pinned together, invoiced as a unit, and sold as a unit both in wholesale and retail channels. When the parts of the merchandise are separated and either part is returned for credit, or when both parts are returned for credit, the parts of the unit are either given to charity or placed in the waste basket. Thus, there appears to be no commercial value of the separate articles comprising the unit except as they are joined as a unit.

A recent decision of this court in the case of *The Nissho American Corp* v. *United States*, 64 Cust. Ct. 378, C.D. 4005 (1970), held certain flannel shirts and corduroy pants to be entireties under authority of the *Miniature Fashions* case, *supra*. In the *Nissho* case, *supra*, the court after considering the *Miniature Fashions* case, *supra*, made the following comment:

> The court pointed out that classification is determined by the condition of the articles at the time of importation and held that at that time the articles were a unit and had no commercial value as separate articles. It rejected the argument that the taste of the wearer and the possibility that the article could be worn separately

was controlling as to the proper classification of the goods as imported. The court concluded (p. 18) :

> There remains for consideration whether this determination circumvents any intent of Congress. We think the evidence establishes that the upper portions of the cabana sets are not the "shirts" on which Congress has fixed a duty of 25% ad val. Appellant has imported what has been designed and sold exclusively as a unit. The upper portion, from the evidence of record, has no commercial value when returned. The upper portions are not imported as separate shirts. In view of the evidence we think the upper portion of the imported sets is more properly classified under paragraph 919 as part of an entirety of clothing rather than as a shirt under the same paragraph. We do not find this to be contrary to the considerations given effect in *Lang, supra.*

Defendant attempts to distinguish this case alleging that the items comprising the shirt and longie set have a commercial reality, existence and value separate and apart from each other and are so bought and sold. The record, however, establishes no more than that there are shirts and trousers, of a better quality, which are bought and sold separately and that each article in the set has a separate intrinsic value. It is clear that the articles herein were not in fact marketed separately, and that they have no commercial value except as a set.

The record in the instant case is devoid of any evidence of a convincing nature that the braided drawstring has a commercial value. The record merely establishes that braided drawstring material could be purchased domestically. Obviously the article discussed in the testimony would not be cut to size. There is no evidence that there is in fact a market for braided drawstrings of the size involved herein. The mere fact that the Tariff Act of 1930 contains a provision for braid is not indicative of the fact that Congress intended the provision to encompass such articles. We are not unmindful that said paragraph 1529 (a), *supra,* cover articles of braid. However, as indicated, *supra,* there is no evidence that a braided drawstring is a commercial entity. The record does clearly establish the fact that the braided drawstring is imported attached to the hooded parka and is not sold separately.

We are, therefore, of the opinion that the imported parkas and the drawstrings are entireties and as such properly classifiable under the provisions of paragraph 1529 (a), *supra,* as classified. The protest is, therefore, overruled.

Judgment will be entered accordingly.