(C.R.D. 73-10)

W. T. Grant Co. v. United States

(Dated April 24, 1973)

*Sharretts, Paley, Carter & Blauvelt* (*Richard L. Furman* of counsel) for the plaintiff.

*Harlington Wood, Jr.*, Assistant Attorney General (*Steven P. Florsheim*, trial attorney), for the defendant.

Maletz, Judge: In these consolidated actions, plaintiff has moved for summary judgment pursuant to rule 8.2, contending that there is no genuine issue as to any material fact and that it is therefore entitled to judgment as a matter of law. Defendant opposes on the ground that a genuine factual issue remains for trial, specifically the identity of the merchandise in question.

The actions arise as follows: On various dates between March 3, 1961 and March 16, 1962, and between January 28, 1963 and April 15, 1963, the merchandise in question—which was of Japanese origin—was entered at the port of New York. The merchandise consisted of cotton shirts, cotton slacks, rayon slacks and cotton shorts which were invoiced as "little boy's wash and wear shirt and slack sets" (item S/0802), "little boys' cabana sets" (items 8-29462 and 8-29884), and "little boy's shirt and short set" (item 8-29678).

The cotton shirts were assessed at 25 percent ad valorem as shirts of cotton, not knit or crocheted, under paragraph 919 of the Tariff Act of 1930, as modified by T.D. 51802, and the cotton slacks and shorts were assessed at 20 percent ad valorem as other clothing and articles of wearing apparel wholly or in chief value of cotton, not specially provided for, under that same paragraph, as modified. The rayon slacks were assessed at $27\frac{1}{2}$ percent ad valorem plus 25 cents per pound under paragraph 1311 of the Tariff Act of 1930, as modified, as rayon articles.

Plaintiff claims that the cabana sets and the shirt and short sets are similar in all material respects to the cabana sets in *Miniature Fashions, Inc.* v. *United States*, 54 CCPA 11, C.A.D. 894 (1966), and that the shirt and slack sets are similar to the shirt and longie sets in *The Nissho American Corp.* v. *United States*, 64 Cust. Ct. 378, C.D. 4005 (1970), which sets, in each case, were held to be entireties

dutiable at 20 percent ad valorem as clothing and wearing apparel, wholly or in chief value of cotton, not specially provided for, under paragraph 919, as modified. Plaintiff further claims that these two cases are *stare decisis* of the issue here, and that the sets in question are likewise entireties dutiable at 20 percent under the same provision of paragraph 919.

Defendant does not dispute the holdings in the cited cases but contends that a genuine issue of fact remains for trial, namely, whether the imported items are entireties and similar, as alleged, to the merchandise involved in *Miniature Fashions* and *Nissho American*.[1]

In the absence of samples of the imported articles or of documents and records relating to their purchase, importation, distribution, sale, advertising or promotion, plaintiff relies in support of its motion upon an affidavit, executed June 21, 1972, of D. Spencer, who from October 1962 through June 1965 was plaintiff-importer's buyer of "little boys' clothes," including little boys' shirt and slack sets, cabana sets, and shirt and short sets.

Spencer stated in his affidavit that he had examined all the entries which are the subject of the present actions and found as a result that he was familiar with all the items listed on plaintiff's schedule [S/0802, 8–29462, 8–29884 and 8–29678] since he had "personally purchased such merchandise on behalf of W. T. Grant." He added that the styles listed consisted—

> * * * exclusively of little boys' shirt and shorts or shirts and pants sets which were designed as sets and matched as to color, print, and fabric. They were imported as a unit, pinned together; invoiced as a unit, and invariably sold as a unit. They were inexpensive articles which had very little if any, value when separated. They did not even warrant the expense of removing the pins which attached the two pieces together, and if one of the parts were damaged, the entire set would be returned for credit or replacement.[2]

---

[1] The affidavit of government counsel accompanying defendant's memorandum in opposition to plaintiff's motion indicates that neither the current import specialist at New York who passes upon this type of merchandise nor the import specialist who actually handled the imported items has any recollection of, or records pertaining to, the items.

[2] Spencer's description is strikingly similar to the trial court's summary of the testimony of plaintiff's witnesses in *Miniature Fashions, Inc.* v. *United States*, 52 Cust. Ct. 26, 27, C.D. 2429 (1964), which was cited by the appellate court (54 CCPA at 13), and reads as follows:

"* * * The items were designed as a unit, matched as to color, print, and fabric; imported as a unit, pinned together; invoiced as a unit; and invariably sold as a unit, both at wholesale and by retail establishments. They are inexpensive articles of children's apparel, which have very little, if any, value when separated. They do not even warrant the expense of removing the pins which attach the two pieces together, and should one of the parts be damaged, the entire set would ordinarily be returned for credit or replacement."

Spencer also stated that he was shown the exhibits of the cabana sets involved in *Miniature Fashions* and of the shirt and longie sets involved in *Nissho American*, and that he found them—

> * * * to be the same or similar as to material, style, color, pattern, function and assembly as sets, as the sets which I purchased for W. T. Grant, described in paragraph 4 above and set forth in the attached schedule.

After plaintiff filed its motion for summary judgment with the accompanying Spencer affidavit, defendant filed a cross-motion to take the oral deposition of Spencer; to have him produce at the deposition various documents and material; and for an extension of time until after the filing of the deposition within which to respond to plaintiff's motion. The cross-motion was granted by the court.

Spencer testified on his deposition that his duties as buyer included selecting and purchasing merchandise, meeting with the manufacturers and working with sales promotion. He ordered the type of merchandise involved here from October 1962 until June 1965 on the basis of "reference samples" submitted by the manufacturer. He saw samples of the shirt and slack sets for the first time in October 1962, and samples of other types of imported items at a later (unspecified) date. To his knowledge, no one inspected the merchandise after it was imported to see if it conformed to what was ordered.

The witness could not recall items S/0802, 8–29462, 8–29884 or 8–29678 when these numbers were read off to him. However, he remembered seeing retail displays of the shirt and slack set in the fall of 1964 at some W. T. Grant stores. The sets, which were stacked on a counter, were folded with a pin underneath the shirt. None of the merchandise, if damaged, was ever returned to Grant at the wholesale level since Grant had no facilities to accept damaged merchandise; instead, Grant advised its stores to dispose of such merchandise as they saw fit. The witness did not know how the stores actually disposed of that type of merchandise. However, the stores received a full allowance from Grant for damaged sets. To Spencer's knowledge, if the shirts, shorts, or slacks in the sets were damaged, the other article in the set was never sold separately.

During the period from October 1962 through June 1965, Spencer testified that plaintiff sold little boys' shirts, boxer shorts, dress shorts and slacks, but he could not remember their retail prices. He could not produce samples, records or other documents pertaining to the importations inasmuch as the importer "only keep[s] samples one year after the season is over" and, after a certain time, all records are destroyed.

The merchandise in issue, Spencer testified, was ordered as sets which were packed, shipped and displayed with the shirt pinned to the bottom. With respect to the shirt and slack set, the order was for "a

printed flannel shirt with a corduroy slack, with a matching flannel lining which matched the shirt, with the bottom of the slack to be turned up so that the customer could see the bottom matched the top." The order also included size and labeling specifications, and a button-hole tag describing the item as a little boy's shirt and slack set.

As for the cabana sets and shirt and short sets, Spencer stated that—

> The only difference [from the shirt and slack set] would be that the shorts were solid color; the top, the shirt, was a print. And we picked up the solid color which was in the shirt on the collar or on the pocket trim or on the sleeve trim, matching the same color combination.

The witness testified that he has dealt with 30,000 item numbers in his 19 years as a buyer of different types of articles for the importer. Upon examining the invoice descriptions of the present merchandise, he recalled that the items were "[l]ittle boys' shirt-and-short sets, little boys' shirt-and-pant sets" and "shirt-and-slack" sets. He "normally" did not refer to this merchandise by their item numbers which were used only for ordering and distribution purposes. He could not recall the colors, patterns or designs of the articles which, to his knowledge, were all cotton.

Defendant contends, against this background, that the deposition establishes that a factual issue remains for trial and that plaintiff's motion for summary judgment should therefore be denied. The court agrees and concludes for the reasons that follow that on the basis of the present record plaintiff has failed to establish the nature and identity of the imported merchandise.

In the first place, Spencer testified that he was familiar with and had personally purchased "such merchandise"; however, the items listed on all but five of the entries in issue were ordered and entered at least six months before he had assumed his duties as buyer of little boys' wear and had even seen samples of the merchandise. Thus, Spencer failed to explain how or when he might have seen the merchandise which was imported between March 3, 1961 and March 16, 1962. Indeed, although claiming knowledge as to how the items were packed, shipped and, after importation, displayed in the stores, the witness conceded that the merchandise was not inspected after importation, and that he did not see any of the imported articles on display in the stores until the fall of 1964—well over a year after entry of the last shipment of the merchandise in question—when he saw a shirt and slack set.

In this latter connection, Spencer failed to explain how he knew that the set he saw on display in 1964 was one of the items involved here in view of the fact that he did not "normally" refer to the articles by their item numbers (except for ordering and distribution purposes),

and he was unable to identify the numbers listed on the commercial invoices herein until he was shown the invoice descriptions for them.

The foregoing deficiencies noted in Spencer's affidavit and oral testimony would alone be sufficient to raise doubts as to his competency to testify respecting the imported articles. But of even greater concern are the major discrepancies between his description of the items in issue and the descriptions set out on the very entries and commercial invoices upon which he relied to "refresh" his recollection.

Specifically, (1) the witness stated that all of the merchandise was cotton, whereas entry 702512, covered by protest 64/17507, shows that some of the slacks listed under item S/0802 were made of rayon and acetate and were classified as rayon articles under paragraph 1311; (2) the witness stated that one of the invoices for "[o]ne little boys' set, or one order, consisted of *three* different style shirts, with matching solid color shorts, pinned together." [Emphasis added.] However, none of the invoices or entries so describe any of the items in issue. In fact, some invoices for cabana sets, e.g., in entries 920877, 987988 and 976831, the subject of protests 64/9519, 67/15467 and 66/6522, describe the item as consisting of boxer shorts and a choice of *four* differently styled shirts which are designated "A", "B", "C" and "D"; (3) although alleging familiarity with all of the items involved here and their similarity to the two-piece sets involved in *Miniature Fashions* and *Nissho American*, Spencer failed (as did government counsel) to observe that item 8–29678, the "little boys' shirt and shorts set" listed on entries 954557 and 938370 in protest 64/9519, and on entry 930018 in protest 64/15611, is described on all the invoices as a *three-piece* set consisting of a shirt, "boxer short" and "dressy short", and that the quantities shown on the entry papers indicate that twice as many shorts as shirts were imported in those shipments. Moreover, it is clear from Spencer's testimony that he thought all of the items in issue consisted of *two-piece units* such as the merchandise in *Miniature Fashions* and *Nissho American*.

The foregoing inaccuracies—which to a major extent were not brought to the court's attention by counsel for the parties—becloud the witness' entire testimony. Undoubtedly, Spencer honestly tried to recollect data and other matter with which he had not been concerned for the past seven years; and it is quite possible that he did order some styles of little boys' clothes which were the same as or similar in all material respects to those involved in *Minature Fashions* and in *Nissho American*—but whether such styles comprise any of the merchandise in this case has not been established.[3]

---

[3] Although so obvious as not to require comment, the three-piece unit described as item 8–29678 patently is not similar in all material respects to the two-piece cabana set involved in *Miniature Fashions*. Whether or not the principle enunciated in that case is applicable here is a separate issue, which, however, is not before us.

The motion for summary judgment is denied.