W. T. Grant Co. *v.* United States

Court Nos. 64/9519, etc.

(Decided January 20, 1975)

*Sharretts, Paley, Carter & Blauvelt* (*Donald W. Paley* and *Samuel Blecher* of counsel) for the plaintiff.

*Carla A. Hills,* Assistant Attorney General (*Robert B. Silverman,* trial attorney), for the defendant.

Maletz, Judge: These consolidated actions involve the dutiable status of merchandise in chief value of cotton consisting of cotton shirts, cotton shorts and cotton slacks. The merchandise—which was imported from Japan and Hong Kong from 1959 to 1963 and entered at the port of New York—was invoiced as Little Boys'

Cabana Sets, Little Boys' Shirt and Short Sets, Little Boys' Shirt and Slack Sets and Little Boys' Flannel Shirt and Lined Corduroy Slack Sets.

The cotton shirts were assessed at 25 percent ad valorem as shirts of cotton, not knit or crocheted, under paragraph 919 of the Tariff Act of 1930, as modified, T.D. 51802, and the cotton slacks and shorts were assessed at 20 percent ad valorem as other clothing and articles of wearing apparel, wholly or in chief value of cotton, not specially provided for, under that same paragraph, as modified.

Plaintiff claims that the cabana sets and the shirt and short sets are similar in all material respects to the cabana sets in *Miniature Fashions, Inc.* v. *United States*, 54 CCPA 11, C.A.D. 894 (1966), and that the shirt and slack sets and the flannel shirt and lined corduroy slack sets are similar to the flannel shirts and corduroy longie sets in *The Nissho American Corp.* v. *United States*, 64 Cust. Ct. 378, C.D. 4005 (1970), which sets, in each case, were held to be entireties dutiable at 20 percent ad valorem as clothing and wearing apparel, wholly or in chief value of cotton, not specially provided for, under paragraph 919, as modified. Plaintiff further claims that these two cases are *stare decisis* of the issue here, and that the sets in question are likewise entireties dutiable at 20 percent under the same provision of paragraph 919.

Defendant does not dispute the holdings in the cited cases; rather it points out that in the present case there is an absence of samples of the imported articles and argues that the record does not establish with any certainty the nature and identity of the merchandise in question. In short, defendant's position is that plaintiff has failed to establish that the merchandise in question consists of entireties for tariff assessment purposes.

Thus the issue here, as it was in *Miniature* and *Nissho*, is whether the record establishes that the imported merchandise consists of entireties dutiable under paragraph 919 as other clothing and articles of wearing apparel, wholly or in chief value of cotton, not specially provided for, at 20 percent ad valorem.[1]

I

The record in the present case consists of (1) the testimony of Jerome E. Garrity in the *Nissho* case (including the exhibits to which

---

[1] Previously, the plaintiff herein filed two motions for summary judgment, covering all of the instant entries prior to consolidation for trial, claiming that no triable issue of fact existed, and that plaintiff was entitled to judgment as a matter of law. These motions for summary judgment were denied on the ground that a genuine factual issue remained for trial, specifically the nature and identity of the merchandise in question. See *W. T. Grant Co.* v. *United States*, 70 Cust. Ct. 354, C.R.D. 73-10 (1973); *W. T. Grant Co.* v. *United States*, 70 Cust. Ct. 372, C.R.D. 73-14 (1973).

his testimony referred), which was incorporated in the present case; (2) the testimony of Drewry F. Wofford, Charles Seitz and Donald Spencer; and (3) the official papers in the present case. At the time of their testimony, all the witnesses were employees of plaintiff, W. T. Grant Co., a nationwide retailer with about twelve hundred stores located throughout the country, and all testified on behalf of Grant. No witnesses appeared for defendant.

At the time of his testimony in the *Nissho* case in November 1968, Mr. Garrity was senior buyer of the boys' department at Grant, after 18 years of service with the company, during which time he had spent 6 years in the infants' and children's department, mostly as its senior buyer, and an earlier year in the infants' and children's department.

Mr. Wofford, at the time he testified in the present case,[2] had almost 26 years of service with Grant during which time he had spent 10 years from 1951 to 1961 as a merchandiser, buyer, stylist, etc. of, primarily, little boys' clothing.

Mr. Seitz, at the time he testified was the import vice president of Grant after nearly 38 years of service with the company, during which time he served from 1946 to 1950 as a buyer of little boys' wear in the children's wear department, thereafter until 1962 as senior buyer of the children's wear department, and from 1962 to 1967 as the merchandise manager of the fashion group of which the children's wear department is a part.

Mr. Spencer, at the time he testified, was a senior buyer of footwear after 20 years of service with Grant. During this time, specifically from 1962 until 1965, he was a buyer in the children's department.

All of the plaintiff's witnesses had experience with, and participated in, the design, production, purchase, importation, advertisement and sale of the merchandise here involved. In addition, Mr. Garrity was familiar with the merchandise which was the subject of the *Nissho* case, while the other witnesses were familiar with the merchandise in both the *Nissho* and *Miniature* cases.

Based on the testimony of these witnesses—which the court finds credible—the record, it is concluded, establishes that the Little Boys' Cabana Sets, Little Boys' Shirt and Short Sets, Little Boys' Shirt and Slack Sets and Little Boys' Flannel Shirt and Lined Corduroy Slack Sets here in issue were always ordered by name; designed as a unit; matched as to color, print and fabric; purchased as a unit; pinned together as sets; inspected abroad for conformance with specifications; inspected after importation for conformance with

---

[2] All the testimony in the present case was taken on February 15, 1974.

specifications;[3] invoiced as a unit to the branch stores of the plaintiff; advertised as a unit; and never broken up and sold separately. The record also establishes that the sets were not imported without the top and bottom portions being color coordinated; the word "sets" as used on the invoices meant coordinated; and for all practical purposes the top and bottom portion of the sets had no commercial value except as they were joined as a unit.

Further, it is worthy of mention that the testimony of Garrity in the *Nissho* case concerned merchandise of exactly the same type as the Little Boys' Flannel Shirt and Lined Corduroy Slack Sets that are involved in the present case. Thus Garrity testified that the merchandise to which he referred in *Nissho* bore W. T. Grant Co. numbers in the 29000 range and that in that range Grant had been importing four specific numbers, i.e., 29462, 29476, 29645, and 29652. These same numbers, it is to be noted, appear on many of the invoices here before the court. It is to be added that these numbers were retained and not reassigned to another type of merchandise as long as the item to which that number was assigned remained on sale, was available from the warehouse or was the subject of reorder. The best evidence of the fact that such sets were the subject of consistent reorder at the Grant company is the continuing flow of importations by Grant of this merchandise at New York during the period from 1959 to 1963.

Garrity's testimony also establishes the similarity in all material respects of the Little Boys' Flannel Shirt and Lined Corduroy Slack Sets here in issue to the merchandise which was the subject of the *Nissho* case.

In addition, each of the witnesses for plaintiff in the present case, Wofford, Seitz and Spencer, tied their testimony to the merchandise

---

[3] The court is quite mindful of the fact that in the course of his deposition the witness Spencer stated that to his knowledge no one inspected the subject merchandise after it was imported to see if it conformed to what was ordered. At the trial Spencer conceded that the foregoing statement was in error. R. 127. He further testified on this score (R. 122-3):

Q. Would there be or would there have been any further checks once the merchandise left the country of exportation as far as whether or not the merchandise conformed to the samples?

A. Yes, normally we would, after the merchandise arrived in this country, we would call our distribution center or our warehouse and ask them to send a case into the buying division. Also, we didn't always do that—if not, we would visit the stores to check to see if the quality of the merchandise was exactly the way we bought it.

Q. Would it always be you?

A. It could be someone else.

Additionally, Spencer testified (R. 127):

* * * I did see the merchandise, your Honor, after it arrived. I can only say that I did not particularly call it in to personally inspect it, but I did see if it was as we bought it. I did have samples in my office. We did call in samples.

Considering his demeanor on the witness stand, and the manner in which he responded to questions at trial, I am persuaded that Spencer was a credible witness and that he made an honest error in stating in his deposition that the subject merchandise was not inspected after it was imported. Further, the testimony of the witness Wofford confirmed that the merchandise was inspected after importation for conformance with specifications. See R. 35-7, 48-9.

involved here by examination of the invoices and then, after examination of the samples in the *Nissho* and *Miniature* cases, testified that the merchandise here in issue is similar to the merchandise involved in those cases.

## II

As we have seen, the *Miniature* case, *supra*, 54 CCPA 11, involved certain children's cabana sets and the *Nissho* case, *supra*, 64 Cust. Ct. 378, involved certain children's shirt and longie sets, which sets in each case were held to be entireties dutiable at 20 percent ad valorem as other clothing and articles of wearing apparel, wholly or in chief value of cotton, not specially provided for, under paragraph 919 of the Tariff Act of 1930, as modified, T.D. 51802. In the *Miniature* case, the appellate court in determining that the cabana sets were entireties relied on the following criteria (54 CCPA at 17):

> Classification is determined by the condition of the articles at the time of importation. *United States* v. *Schoverling, supra.* Viewed at that time, the evidence shows that they were designed as a unit, matched as to color, print and fabric, imported as a unit and pinned together, invoiced as a unit, and sold as a unit both in wholesale and retail channels. When the parts of the merchandise are separated and either part is returned for credit, or when both parts are returned for credit, the parts of the unit are either given to charity or placed in the waste basket. Thus, there appears to be no commercial value of the separate articles comprising the unit except as they are joined as a unit.

The court in *Miniature* added (54 CCPA at 18):

> There remains for consideration whether this determination circumvents any intent of Congress. We think the evidence establishes that the upper portions of the cabana sets are not the "shirts" on which Congress has fixed a duty of 25% ad val. Appellant has imported what has been designed and sold exclusively as a unit. The upper portion, from the evidence of record, has no commercial value when returned. The upper portions are not imported as separate shirts. In view of the evidence we think the upper portion of the imported sets is more properly classified under paragraph 919 as part of and entirely of clothing rather than as a shirt under the same paragraph. * * *

Similarly in the *Nissho* case the court relied on the following criteria (64 Cust. Ct. at 381–2):

> The record thus establishes that the shirt and longie set herein was designed, purchased, imported, and invoiced as a unit. The two pieces were matched as to color, print and fabric. The merchandise was advertised to retail customers as a set and was so sold both at wholesale and at retail. It was never broken up and the items sold separately. If returned by a customer, it would be resold as a set or if defective, destroyed or given to charity. While the shirt portion is a shirt and the trouser portion trousers

and the ultimate consumer may use them separately with other trousers or slacks, it is clear that they were designed and merchandised as a set to be worn together.

As previously indicated, the unrebutted testimony of the witnesses for the plaintiff in the present case is that the articles in issue are designed as a unit, matched as to color, print and fabric, purchased as a unit and pinned together as sets, inspected abroad for conformance with specifications, inspected after importation for conformance with specifications, invoiced as a unit to plaintiff's branch stores, never broken up and sold separately, advertised and sold as sets or units and, for all practical purposes, have no commercial value except as they are joined as a unit. The record in this case thus firmly establishes that the characteristics of the merchandise here in issue meet the criteria set out in the *Miniature* and *Nissho* cases.

What is more, Garrity's testimony in the *Nissho* case, incorporated herein, confirms and corroborates the similarity of Grant's merchandise to the merchandise in the *Nissho* case. Each of the other three witnesses whose testimony remains uncontradicted tied the merchandise here in issue to the exhibits in the *Miniature* and *Nissho* cases by examining the exhibits in the cited cases and testifying to their similarity.

In this latter connection, however, it is to be observed that in contrast to the situation in *Miniature* and *Nissho* where *two-piece* sets were involved, in the present case three of the entries covered by two of the protests involve *three-piece* sets consisting in each instance of a shirt and two pairs of color coordinated pants. It is of course obvious that the three-piece sets differ from the two-piece sets in price and in the quantity of articles received by the purchaser and are thus not similar to the two-piece sets in all material respects. Withal, the "similarity" test that must be met by the three-piece sets in order to be classified the same as the two-piece sets for customs purposes is—as set out in *Miniature* and *Nissho*—that at the time of importation the set shall have been designed as a unit, matched as to color, print and fabric, imported as a unit and pinned together, invoiced as a unit and sold as a unit both in wholesale and retail channels and have no commercial value except as they are joined as a unit. At the trial, the witnesses Wofford and Seitz testified without contradiction that the three-piece sets here involved—like the two-piece sets—meet each and every one of the foregoing criteria. See R. 24–27, 49–50, 110–112.

Finally, the court must conclude in the circumstances of the present case that the unavailability of a sample should not act as a bar to recovery. As to this, the witness Seitz stated that although be had

made diligent efforts to obtain samples of the actual importations he was unsuccessful because this type of merchandise stopped selling in any significant volume approximately 6 years previously. The witness stated that he had requested plaintiff's buying agent to check its offices in New York and Japan and was advised that no samples were available. He further testified that a physical inventory revealed that there was no such merchandise in plaintiff's warehouses.

Against this background, the court agrees with plaintiff's position that the deficiency caused by lack of samples has been overcome by the complete record now before the court. The three witnesses who testified were thoroughly familiar with the merchandise in question, from the designing and planning stage through its sale to the retail purchaser. They examined exhibits 1A and 1B in the *Nissho* case and exhibits 1A, 1B, 2A and 2B in the *Miniature* case and stated that except for possible differences in weight of the fabric, thread count, color, shape of a collar or number of buttons on the shirt front, those exhibits were similar to the merchandise covered in the present case insofar as design and coordination of the sets were concerned and that those exhibits were illustrative of the sets imported by Grant.

The testimony adduced at the trial now includes that of the buyers of the merchandise at bar, imported from 1959 to 1963. The witness Wofford was the buyer of little boys' clothing at Grant from 1951 to 1961, the witness Garrity for a short period of time thereafter and the witness Spencer from 1962 to 1965. These witnesses were supervised by the witness Seitz who was senior buyer for children's wear and specifically little boys' wear from 1950 to 1962 and by the witness Garrity who was senior buyer, succeeding Seitz, from 1962 onward, with Seitz supervising both the line buyer Spencer and the senior buyer Garrity from 1962 until the end of 1967. The testimony is ample, therefore, with respect to the buyers of the merchandise at bar to cover the period from long before 1959, the commencement of the importations at bar, to well after 1963, when the importations terminated. Further, the record establishes without contradiction that all of the witnesses were familiar with the imported merchandise and recognized that merchandise by the invoice description that was commonly and uniformly utilized during the period when these articles were imported.

### III

In summary, the articles here, as in *Miniature* and *Nissho*, were designed to be worn together, were fastened together upon importation, were advertised and sold as a set, were never broken up and sold separately and had no commercial value as separates. Those were the facts upon which the court in *Miniature* and *Nissho* based its

decisions that such articles were not separately classifiable but were dutiable as entireties. The same reasoning is equally applicable to the present case.[4]

It is therefore held that the imported sets consist of entireties dutiable at 20 percent ad valorem under paragraph 919 of the Tariff Act of 1930, as modified, as other clothing and articles of wearing apparel, wholly or in chief value of cotton, not specially provided for. Accordingly, plaintiff's claim is sustained and judgment will be entered to that effect.

---

[4] As the court observed in the *Miniature* case, *supra,* 54 CCPA at 18, an article designed and sold exclusively as a unit with a pair of pants is not the "shirts" on which Congress fixed a 25 percent rate of duty. This reasoning applies with equal force to the three-piece sets and the two-piece sets. The three-piece sets consist of one top and two pairs of color coordinated pants. The two pairs of pants were classified at the 20 percent rate applicable to clothing or articles of wearing apparel. Thus a decision upholding the claim for classification of the shirt and two pairs of pants as an entirety can only affect the rate of duty applied to the shirt in the protested classification. Clearly the shirt is an entirety with one pair of pants even if the other pair of pants be treated separately. The separation of one pair of pants from the entirety does not destroy the entirety and can have no effect upon either the rate of duty or the total amount of duty due upon all three items.