DETERMINED PRODUCTIONS, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 80–9–01527

Before DiCARLO, *Judge.*

(Decided February 26, 1986)

*Stein Shostak Shostak & O'Hara (Joseph P. Cox),* for plaintiff.
*Richard K. Willard,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Department of Justice *(Susan Handler-Menahem),* for defendant.

MEMORANDUM OPINION AND ORDER

DiCARLO, *Judge:* Plaintiff challenges the United States Customs Service (Customs) classification of merchandise invoiced as "Clinging Snoopy/Woodstock" imported from the Republic of Korea. The Snoopy figures were classified under item 737.30, Tariff Schedules of the United States (TSUS), as "toy figures of animate objects: not having a spring mechanism: stuffed: valued over 10 cents per inch of height" at nine percent ad valorem and the Woodstock figures were classified under item 737.25, TSUS, as "toy figures of animate objects: not having a spring mechanism: stuffed: valued not over 10 cents per inch of height" at twenty-eight percent ad valorem.

Plaintiff argues the merchandise should be classified as an entirety, under item 737.30, TSUS.

Defendant moves and plaintiff cross-moves for summary judgment. In their statements of material issues of fact submitted pursuant to Rule 56(i) of the Rules of this Court the parties agree that the merchandise consists of two stuffed figures modeled after the *Peanuts* comic strip characters Snoopy and Woodstock; that in its imported condition, the Snoopy figure embraces the Woodstock figure by means of a velcro fastener on the ends of its front paws; that the merchandise was designed, packaged, sold, and purchased as a unit; and that plaintiff sells numerous different sizes and types of stuffed and other kinds of Snoopy and Woodstock figures as individual

items, but does not individually sell Snoopy and Woodstock figures identical to those before the court.

The parties also agree that the two figures have an "individual identity and play value." They do not agree whether the two figures have an individual "commercial value." The parties have stipulated that the Court will make a finding of fact with respect to this issue.[1]

Plaintiff argues that since the merchandise is designed, packaged, sold, and purchased as a unit, it is properly classified as an entirety.

But these facts are not determinative of the entirety inquiry. *United States* v. *Altray,* 54 CCPA 107, 110, C.A.D. 919 (1967); *Lang Co.* v. *United States,* 15 CCPA 341, 342, T.D. 42495 (1927); *Mattel, Inc.* v. *United States,* 8 CIT 323, Slip Op. 84–133 (December 11, 1984). In *Mattel* doll stands designed, imported, and sold with "Pretty Changes Barbie" dolls which could be used with other dolls were held not to be an entirety with the Barbie dolls. Applying the "somewhat discordant principles" of entireties law, the Court said that the stands and the dolls were not entireties because: "When merged, they do not form a new and distinct article of commerce having a different character or use. Further, because neither is essential to the completeness of the other, and since neither bears a natural affinity or relation to the other, they must be classified and assessed duty separately." *Mattel,* Slip Op. at 4–6.

Plaintiff's catalog contains an illustration of nine stuffed Snoopy figures and three stuffed Woodstock figures of various sizes sold individually by plaintiff. The Snoopy and Woodstock figures before the Court appear substantially similar to several of these Snoopy and Woodstock figures.[2] The important physical distinction apparent to the Court between other figures sold by plaintiff and the merchandise before the Court is the velcro fastener on the end of Snoopy's paws. Both the figures before the Court can be used separately or with other toys, including other Snoopy and Woodstock figures sold by plaintiff.[3] Examining a sample of the merchandise, plaintiff's catalog, other exhibits before the Court, and the parties' statements of material issues of fact submitted pursuant to Rule 56(i), the Court finds as a matter of fact, on the basis of this record, that the Snoopy and Woodstock figures have an individual commercial value.[4]

In the opinion of the Court, the addition of the velcro fastener is insufficient to make either the Snoopy or the Woodstock figure essential to the completeness of the other or to give the figures a "natural affinity or relation" to each other, as those terms have been ap-

---

[1] Transcript of Telephone Conference, January 28, 1986, at 2–6.

[2] The Snoopy figure before the court is 11 inches tall, and the Woodstock figure is 7 inches tall. According to plaintiff's catalog, plaintiff also sells an 11 inch "Baby Plush Snoopy", an 18 inch "Medium Plush Snoopy", an 18 inch "Sleepy Snoopy", a 6 inch "Velveteen Woodstock", a 9 inch "Plush Swinging Woodstock", and a 9 inch "Plush Woodstock."

[3] An entire line of "Snoopy's Wardrobe" clothing available for the "Baby Plush Snoopy", may be used with the Snoopy figure before the Court. There is also a line of accessories, including a wardrobe trunk, chairs, sleeping bags, and tent, which could be used with the figures.

[4] Customs is presumed to have found every subsidiary fact necessary to suport its classification, *United States* v. *New York Merchandise Co., Inc.,* 58 CCPA 53, 57–59, C.A.D. 1004, 435 F.2d 1315, 1317–1319 (1970), and plaintiff has the burden to show by a preponderance of the evidence that the facts found by Customs in making its classification are incorrect. *See* 19 U.S.C. § 2639(a)(1) (1982); *Jarvis Clark Co.* v. *United States,* 733 F.2d 873, 876, *reh. denied,* 739 F.2d 628 (Fed. Cir. 1984). Customs must have found that the figures had an independent commercial value to classify them, and assess ad valorem duty, separately, and the Court finds that plaintiff has not overcome its burden to demonstrate the incorrectness of this finding.

plied in entireties law. *See United States v. John Wanamaker, Philadelphia, Inc.,* 20 CCPA 367, 369 (1933); *Mattel, supra.*[5] As the Court *of Customs and Patent Appeals said in United States v. Altray Co.,* 54 CCPA 107, 110, C.A.D. 919 (1967):

> where the design of the combination in issue by its very nature contemplates its disassembly and the utilization of the constituents in the manner for which they are otherwise used and when articles very similar to those constituents are on sale as separate items, the combination is not, in the sense of the customs law, an entirety.

Cases cited by plaintiff are inapposite. Unlike the "two-piece shirt-short sets" or "cabana sets" at issue in *Miniature Fashions, Inc. v. United States,* 54 CCPA 11, C.A.D. 894 (1966), or the "cotton flannel shirts and corduroy longie sets" at issue in *Nissho American Corp. v. United States,* 64 Cust. Ct. 378, C.D. 4005 (1970), the Snoopy and Woodstock figures before the Court have an independent commercial value and the character and use of the figures are substantially the same whether the figures are used together, individually, or with other merchandise. Unlike the cotton pads impregnated with inhalant and their cylindrical holders at issue in *Donalds Ltd., Inc. v. United States,* 32 Cust. Ct. 310, 315, C.D. 1619 (1954), the individual identities of the figures before the Court are not subordinate to the identity of the unit.

It is axiomatic that the entireties doctrine is merely an aid to ascertain the intent of Congress. *Miniature Fashions, Inc. v . United States,* 54 CCPA 11, 16, C.A.D. 894 (1966). Congress has determined that less expensive stuffed figures are dutiable at a substantially higher rate than more expensive figures. The Court would frustrate the intent of Congress if it considered the figures before the Court an entirety, and dutiable at the lower rate.

The Court holds that the merchandise is not an entirety. Judgment for the defendant will be entered accordingly. So ORDERED.

---

[5] Plaintiff argues that the Snoopy and Woodstock figures together have an "enhanced play value." But plaintiff does not allege that the figures are, or are intended to be, used predominately in their "clinging" position, or that the figures have any special significance in that position.